OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This case calls upon us to address a doctrine which "continues to bedevil the courts” (McLaughlin, 1990 Supplementary
 
 *176
 
 Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C203:3, 1995 Cum Ann Pocket Part, at 28). Under what circumstances does an amended complaint adding a new defendant, united in interest with the original defendant, relate back to the initial complaint for Statute of Limitations purposes? In particular, must the party seeking leave of court to add a new defendant show "excusable mistake” for the failure to have named the new party originally, or is a mistake alone enough?
 

 Concluding that New York law requires merely mistake — not excusable mistake — on the part of the litigant seeking the benefit of the doctrine, we hold that plaintiffs’ second complaint relates back to their original complaint and is therefore timely, thus defeating defendants’ claim of adverse possession.
 

 I.
 

 In 1962, plaintiffs Robert and Arlene Buran purchased a one-acre lot in Beekmantown, New York, the deed to which conveys property rights extending north into the waters of Lake Champlain. Five years later, defendants John and Janet Coupal obtained property known locally as Dickson’s Farm which abuts the Burans’ lot at its northeast corner. Since— unlike the Burans’ waterfront property — Lake Champlain is not otherwise accessible from Dickson’s Farm, the Coupals in 1973 erected a concrete seawall jutting diagonally across the border of their own lot and over the Burans’ property into the waters of the lake.
 

 Unhappy with the seawall, the Burans in 1979 brought a lawsuit for trespass, naming only John Coupal as defendant. Though omitting any reference to his wife in his first two answers, in September 1982, John Coupal filed an "amended amended” answer, for the first time arguing that he owned the lot with his wife as a tenant by the entirety and that the Burans’ complaint should be dismissed for failure to name Janet Coupal as a necessary party. Shortly after filing this answer, however, the Coupals transferred ownership of their lot to Ultimate Investment Services Incorporated, Ltd., a corporation they owned and controlled.
 

 After the Burans served a summons on Ultimate Investment, the lot was in 1984 reconveyed to the Coupals. The Bu
 
 *177
 
 rans then filed a second complaint in 1989, this time against Janet Coupal as co-owner. Both complaints contained substantially the same allegations as to the nature of the Coupals’ trespass, the only substantive difference being the addition of Janet Coupal as a party defendant. As an affirmative defense to the second lawsuit, Coupal asserted that she and her husband were by then the owners of the disputed property, having adversely possessed it for a period of 10 years.
 

 After consolidation of the two actions in 1992 and a jury trial, Supreme Court ordered removal of the seawall within 120 days and restoration of the land to the Burans, and the Appellate Division affirmed. Both lower courts rejected defendants’ contention that Janet Coupal had become owner of the property under the doctrine of adverse possession. Focusing, as did the Appellate Division, on the legal question whether plaintiffs’ 1989 complaint against Janet Coupal relates back to the allegations contained in the 1979 complaint against her husband,
 
 [1]
 
 we agree that defendants failed to meet their burden of proving the affirmative defense of adverse possession.
 

 II.
 

 As codified in New York’s Civil Practice Law and Rules, what is commonly referred to as the relation back doctrine allows a claim asserted against a defendant in an amended filing to relate back to claims previously asserted against a codefendant for Statute of Limitations purposes where the two defendants are "united in interest” (CPLR 203 [b];
 
 see also,
 
 CPLR 203 [e] [relation back of new claims against same party]).
 

 Aimed at liberalizing the strict, formalistic pleading requirements of the past century
 
 (see, Shaw v Cock,
 
 78 NY 194;
 
 Harriss v Tams,
 
 258 NY 229) or the "sporting theory of justice” condemned by Roscoe Pound
 
 (see, Schiavone v Fortune, 477
 
 US 21, 32-33 [Stevens, J., dissenting]), while at the same time respecting the important policies inherent in statutory repose
 
 (see, Duffy v Horton Mem. Hosp.,
 
 66 NY2d 473, 476-477), the doctrine enables a plaintiff to correct a pleading error — by adding either a new claim or a new party — after the statutory limitations period has expired. The doctrine thus gives courts the
 
 *178
 
 "sound judicial discretion”
 
 (Duffy,
 
 66 NY2d at 477) to identify cases "that justify relaxation of limitations strictures * * * to facilitate decisions on the merits” if the correction will not cause undue prejudice to the plaintiffs adversary (Lewis,
 
 The Excessive History of Federal Rule 15 (c) and Its Lessons for Civil Rules Revision,
 
 85 Mich L Rev 1507, 1512 [1987]).
 

 As we observed in
 
 Duffy v Horton Mem. Hosp.
 
 (66 NY2d at 477), however, allowing the relation back of amendments adding new defendants implicates more seriously these policy concerns than simply the relation back of new causes of action since, in the latter situation, the defendant is already before the court. Recognizing this difference, in
 
 Mondello v New York Blood Ctr.
 
 (80 NY2d 219, 226), we recently adopted the three-part test enunciated in
 
 Brock v Bua
 
 (83 AD2d 61) now prevailing in the Federal and State courts for determining when the doctrine would permit the addition of a new party to relate back to an earlier pleading.
 

 Under this standard, the three conditions that must be satisfied in order for claims against one defendant to relate back to claims asserted against another are that:
 

 "(1) both claims arose out of same conduct, transaction or occurrence, (2) the new party is 'united in interest’ with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.”
 
 (Brock v Bua,
 
 at 69 [citations omitted].)
 

 Mondello
 
 involved claims of negligence brought first against a hospital and later against a blood bank arising from plaintiffs’ infection with the HIV virus after receiving a blood transfusion. In applying the
 
 Brock
 
 test to the facts of that case and rejecting the argument that the hospital and the blood bank were sufficiently united in interest to support application of the doctrine, we had no occasion to consider the scope of the requirement under the third prong, or whether the failure of plaintiff’s counsel to name the blood bank originally was "excusable” (80 NY2d at 230). Here, by contrast, since it is undisputed that the first and second prongs of the
 
 Brock
 
 test
 
 *179
 
 are satisfied,
 
 [2]
 
 we now address the issue explicitly left open in
 
 Mondello
 
 and decide that excusability of the mistake is not an absolute requirement under New York law
 
 (see, Virelli v Goodson-Todman Enters.,
 
 142 AD2d 479, 482-484 [applying
 
 Brock’s
 
 third prong, but declining to accept excusability requirement]).
 

 Though patterned largely after the Federal relation back rule
 
 (Mondello,
 
 80 NY2d at 226), the test articulated in
 
 Brock
 
 differs from its Federal counterpart in one crucial respect: it contains, as an additional requirement, that plaintiffs omission of the party in the original pleading be excusable. In marked contrast to
 
 Brock’s
 
 third prong, rule 15 (c) of the Federal Rules of Civil Procedure merely requires that the new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party” (Fed Rules Civ Pro, rule 15 [c] [3] [B]). Thus, unlike
 
 Brock,
 
 "the Federal rule does not qualify the nature of the mistake”
 
 (Virelli,
 
 142 AD2d at 483;
 
 see also, Livingston Export Corp. v M/ V Ogden Fraser,
 
 727 F Supp 144, 147 ["The only additional condition precedent to invoking the New York relation back doctrine is excusable neglect.”]).
 

 Underscoring the difference is the fact that, though omitted from the text of rule 15 (c), language similar to "excusable mistake” is used in other provisions of the Federal rules. Rule 6, for example, permits parties to make late filings "where the failure to act was the result of
 
 excusable neglect”
 
 (Fed Rules Civ Pro, rule 6 [b] [emphasis added];
 
 see also,
 
 Fed Rules Civ Pro, rule 13 [¶] [amended counterclaim may be filed upon showing of excusable neglect]). It is thus plain that, at least with respect to the Federal rule on which New York’s own three-part test was premised, there is no requirement of "excusable” mistake
 
 (see also, Schiavone v Fortune,
 
 477 US 21, 31,
 
 supra).
 

 In fact, the "excusable mistake” requirement appears to have originated as a judicial gloss imposed on rule 15 (c) in a category of Federal decisions denying plaintiffs the benefit of the doctrine on grounds that they deliberately failed to identify the proper party who was known to them at the time
 
 (see, e.g., Bruce v Smith,
 
 581 F Supp 902;
 
 Jacobs v McCloskey & Co.,
 
 40
 
 *180
 
 FRD 486), or where the proposed new defendant had no notice of the pendency of the action such that the defendant could not reasonably have expected to have been sued (see,
 
 e.g., Kilkenny v Arco Mar.,
 
 800 F2d 853;
 
 Keller v Prince George’s County,
 
 923 F2d 30). In both situations, the courts properly rejected application of the doctrine on the ground either that there was no "mistake” — i.e., that plaintiffs knew of the existence of the proper parties at the time of their initial filing, or that application of the doctrine would unduly prejudice the defendant’s rights. As described in a passage from Moore’s Federal Practice cited in
 
 Brock
 
 (83 AD2d at 69), these cases rest on the sound conclusion that:
 

 "it is often plaintiff’s own dilatory conduct that is most relevant in assessing whether the prospective party knew, or should have known, that plaintiff simply made a mistake in failing to name the prospective party as a defendant. Thus, plaintiff’s own
 
 inexcusable neglect
 
 would appear to be a proper consideration in a Rule 15 (c) determination” (3 Moore, Federal Practice 15.15 [4], at 15-168 [2d ed 1995] [emphasis added]).
 

 Despite the existence of this judicially created exception to the doctrine for reasons of lack of notice or bad faith, it is apparent that apart from excusability of the mistake, the
 
 Brock
 
 test already provides an independent ground for denying application of the doctrine in these cases — absence of mistake under the first prong or operative prejudice to the defendant under the second. Adding the word "excusable” to the third prong effectively converts what are already valid considerations under the first and second prongs into an independent factor under the third (see,
 
 Bruce v Smith,
 
 581 F Supp 902, 906,
 
 supra;
 
 Note,
 
 Schiavone v Fortune: A Clarification of the Relation Back Doctrine,
 
 36 Cath U L Rev 499, 511 [1987]).
 

 Moreover, addition of the word "excusable” also improperly deemphasizes what the United States Supreme Court has called the "linchpin” of the relation back doctrine — notice to the defendant within the applicable limitations period
 
 (Schiavone v Fortune,
 
 477 US 21, 31,
 
 supra).
 
 As explained in ,
 
 Virelli, Brock’s
 
 "excuse qualification * * * shifts the focus away from the primary question of whether the new party had actual notice of the claim” (142 AD2d at 483).
 

 Indeed, requiring courts to determine in each case whether the plaintiff’s mistake was "excusable” unwisely focuses atten
 
 *181
 
 tian away from what
 
 Brock
 
 assumed to be the primary consideration in such cases — whether the
 
 defendant
 
 could have reasonably concluded that the failure to sue within the limitations period meant that there was no intent to sue that person at all "and that the matter has been laid to rest as far as he is concerned”
 
 {Brock,
 
 83 AD2d at 70).
 

 Even more troubling, however, is that the excusability test often punishes the plaintiff for even minor drafting errors— precisely the situation that warrants application of the doctrine. As
 
 Virelli
 
 observed in rejecting addition of the word "excusable” to the third prong, "[plaintiff’s only explanation for the misidentification is that the attorney who drafted the summons and complaint had never seen the descriptive announcement. * * * [S]imilar excuses have been rejected outright in
 
 Brock
 
 and its progeny” (142 AD2d at 483). Indeed, the practical effect for New York litigants has been to render the relation back doctrine meaningless in all but rare circumstances (s
 
 ee, e.g., Sandor v Somerstown Plaza Assocs.,
 
 210 AD2d 212 [relying on third prong in dismissing plaintiff’s claims];
 
 Iannarone v Faucetta,
 
 204 AD2d 396 [same];
 
 Hernandez v William J. Scully, Inc.,
 
 203 AD2d 245 [same];
 
 Smith v Cutson,
 
 188 AD2d 1034 [same];
 
 Sucese v Kirsch,
 
 177 AD2d 890 [same];
 
 County of Rockland v Spring Val. Water Co.,
 
 134 AD2d 317 [same]). Surely, such a result is not in keeping with modern theories of notice pleading and the admonition that the Civil Practice Law and Rules "be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding” (CPLR 104).
 

 This is not to say, however, that removing the excusability requirement from the third prong would prevent a court from refusing to apply the doctrine in cases where the plaintiff omitted a defendant in order to obtain a tactical advantage in the litigation. When a plaintiff intentionally decides not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired
 
 (see,
 
 Note,
 
 The Relation Back of Claims Against Third-Party Defendants,
 
 7 Cardozo L Rev 281, 304 [1985]). Similarly, a court would be justified in denying a plaintiff the benefit of the doctrine in order to prevent delay or disruption in the normal course of the lawsuit. Application of the doctrine in such circumstances would likely result in prejudice to the adversary and, as noted above, bar application of the doctrine under the second prong.
 

 
 *182
 
 III.
 

 Applying these principles to the facts before us, we agree with the Appellate Division that the trial court acted within its discretion in permitting relation back of the 1989 complaint against Janet Coupal to the 1979 claims against her husband. In that it is undisputed that Janet Coupal had notice of the action against her husband, the question whether the Burans’ mistake in failing to name her initially was "excusable” was immaterial. Adding her as a party resulted in no delay or prejudice. As co-owner of the property, Janet Coupal was at all times united in interest with her husband who was timely served and had a full opportunity to make an investigation within the limitations period.
 

 In fact, any prejudice or bad faith in this case is attributable entirely to the acts of the defendants. At the very time that John Coupal was amending his answer to add the defense that his wife was a necessary party, he and his wife were transferring their property to Ultimate Investment in an obvious effort to delay resolution of the Burans’ claims. Thus, given that Janet Coupal was aware that trespass allegations were being made against her with respect to the disputed seawall at least as early as 1982 when she actively participated in transferring (and later retransferring) the property, the claims against her were properly permitted to proceed on their merits.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Given our conclusion that the relation back doctrine applies to the circumstances of this appeal, we need not reach the ground principally relied upon by the trial court in dismissing the Coupals’ adverse possession defense — that the two-year interval during which Ultimate Investment held title to Dickson’s Farm defeated any claim of adverse possession.
 

 [2]
 

 . As husband and wife and tenants by the entirety/co-owners of Dickson Farm, jointly and severally liable for each other’s acts with respect to the property, it is plain that the Coupals are "united in interest” for purposes of the relation back doctrine (compare,
 
 Mondello v New York Blood Ctr.,
 
 80 NY2d 219,
 
 supra).