**Shlomo LIEBER, Plaintiff,**

v.

**VILLAGE OF SPRING VALLEY; Spring Valley Police Department; Howard Goldin, individually and as Chief of the Spring Valley Police Department; Officers O'Sullivan, Gualano, John Doe 1, John Doe 2, and John**

Doe 3, each individually and as a police officer of the Spring Valley Police Department; East Ramapo Central School District; Finkelstein Memorial Library; Eleanor Wolven, individually and as the Director of the Finkelstein Memorial Library; Vincent Abrahams, Lennie Smolenski, and Maggie Thomas, individually and as security officers of the Finkelstein Memorial Library, Defendants.

Nos. 97 Civ. 7825 BDP,
97 Civ. 7828 BDP.

United States District Court,
S.D. New York.

March 31, 1999.

Eric A. Israel, New City, NY, for plaintiff.

Thomas J. LaFauci, Dowd & LaFauci, Syosset, NY, for Finkelstein Memorial Library.

Paul I. Marx, Marx & Aceste, LLP, White Plains, NY, for Village of Spring Valley, consolidated defendants.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff Shlomo Lieber originally brought this suit *pro se* against the Village of Spring Valley, seeking damages stemming from an alleged July 29, 1996 false arrest and unlawful imprisonment at the Spring Valley Police Station, after a "trespass" at the Finkelstein Memorial Library (the "Library"). Lieber also instituted a separate action against the Library, which was consolidated with this action on May 15, 1998.

On June 4, 1998, Eric A. Israel, Esq. filed a Notice of Appearance for Lieber in both cases. On August 27, 1998, this Court granted Lieber leave to serve an amended complaint, which was done on August 31, 1998. The same day, Lieber's counsel served by fax another amended complaint, which "supercede[d] all prior versions." The amended complaint names as defendants the Village of Spring Valley, the Spring Valley Police Department, Spring Valley Chief of Police Howard Goldin (sued individually and officially), various police officers of the Spring Valley Police Department (sued individually and officially) (collectively, the "Spring Valley defendants"), and the East Rampo Central School District, Finkelstein Memorial Library, the library director Eleanor Wolven (sued individually and officially), and several security officers employed by the Library (collectively, the "Library defendants"). Lieber seeks damages and injunctive relief against the Library defendants for their allegedly unwarranted expulsion and banning of Lieber from the Library without a pre-banning hearing, their instigation of Lieber's false arrest by Spring Valley police officers on the grounds of trespass, and their malicious prosecution of Lieber based on trespass charges.

Lieber's claims against the Spring Valley defendants relate to an alleged false arrest, a full-body strip search, false imprisonment in the police station and a locked cell, the use of excessive force in executing the strip search and in forcing Lieber into the lobby of the police station, and deficient supervision and training of the Spring Valley police officers that amounted to deliberate indifference to Lieber's constitutionally protected rights.

Defendants now move for dismissal of the amended complaint on the grounds of: 1) undue delay in making the application to amend; 2) futility of the amendment; and 3) prejudice to the defendants. The defendants also seek dismissal of the New York common law claims (Lieber's Claims 12, 13, and 14) on the grounds that 1) Lieber failed to properly serve a notice of claim on the defendants as set forth in General Municipal Law §§ 50-e and 50-i, and 2) Lieber's claims are barred by the applicable statute of limitations. In addition, defendants contend that the "relation back" doctrine does not apply to allow Lieber to

maintain his claims against the newly added defendants. For the reasons set forth below, defendants' motion is denied in part and granted in part.

## BACKGROUND

In deciding a motion pursuant to Rule 12(b), the court is, of course, obligated to construe the pleadings in the plaintiff's favor. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). The following facts are accordingly construed.

Lieber suffers from a mental illness known as Obsessive Compulsive Disorder ("OCD"). This illness compels him to engage in repetitive actions and avoid certain circumstances out of a fear of contamination or other perceived danger. His condition was first diagnosed in 1979.

Over the past few years, Lieber has frequented the Library, where he reads books and newspapers available to the general public. In late 1995 or early 1996, Lieber contends that he personally informed defendant Eleanor Wolven, the Library Director, of his mental disability.

Lieber alleges that on July 25, 1996, he went to the third floor of the Library to read the newspapers there. When he arrived, a Library patron, Mr. Friedman, was holding several newspapers Lieber wished to read, and was conversing with a Library employee, a male with a ponytail, who had made disparaging remarks to Lieber on several occasions because of his disability. Because his OCD created an obsessive fear of dirtying his hands with newspaper print, Lieber was wearing disposable gloves, a fact that Mr. Friedman and the Library employee allegedly mocked.

Lieber contends that he approached Mr. Friedman and asked to read the newspapers he was holding. Friedman said no, and went downstairs with the papers, a practice forbidden by a sign posted on the third floor of the Library. Lieber brought the violation to the attention of a female employee of the Library, but Friedman returned to the third floor with the newspapers.

Before talking to Friedman, Lieber had inquired of another Library patron, Eva Kaplan, whether he could look at a section of the newspaper that she was reading. Following the incident with Friedman, Lieber again asked Kaplan for the section of the paper, which she gave him, he read, and returned to her. At this point, Lieber contends that the employee of the library with the ponytail told Lieber that he was bothering Kaplan. Although Lieber denied bothering Kaplan, the man with the ponytail called for Library security.

Lieber contends, upon information and belief, that Library security guards tried to intimidate Kaplan into making a complaint against Lieber based on the events of that day. On July 26, 1996, however, Kaplan wrote and addressed a note to the Director of the Library, stating, "Mr. Shlomo Lieber has not disturbed me in any way during my presence at the library on July 25 1996. I do not wish to lay any complaints against him."

When Library security arrived, defendant security officers Vincent Abrahams and Lenny Smolenski took Lieber's belongings, picked Lieber up from his chair, took him to the elevator, and removed him from the building. Once outside, the officers asked Lieber his name, address, and telephone number. Because the officers refused to return his belongings to him, Lieber declined to answer these questions. The officers refused to tell Lieber why he had been involuntarily removed from the library.

In the meantime, Library personnel had called the Spring Valley police department. Two Spring Valley police officers soon arrived. They took Lieber's name and mailing address, retrieved his belongings from the security officers, and told Lieber that he should not return to the Library.

The following day, July 26, 1996, Eleanor Wolven allegedly told Lieber that she would conduct an investigation of the pre-

vious day's incident, and that within the next several days she would issue him a letter with respect to his access to the Library. Over the course of several telephone conversations that day, Lieber told Wolven that the security guards had no right to eject him from a public library since he had broken no Library rules or interfered with the rights of any other Library patrons, and complained that the library employees and guards were abusing him. Lieber also told Wolven that he had Kaplan's letter stating that he had not bothered her at the Library on July 25.

On the evening of July 29, 1996, Lieber returned to the Library to watch a friend's children participate in a chess tournament that was open to the public. Within fifteen minutes of Lieber's arrival, however, a female security officer approached and directed Lieber to leave the Library. When Lieber asked for an explanation and an official written directive requiring him to leave, the security officer simply repeated her demand that he leave the library. At that point, defendant Maggie Thomas, a Library security officer, directed that the Spring Valley police department be called.

Shortly thereafter, Spring Valley police officers O'Sullivan and Gualano arrived and removed Lieber from the Library. When Lieber asked what he had done wrong, the officers stated only that Lieber "had to leave." Lieber's removal from the library occurred in full view of the children playing in the chess tournament, the parents of the children, and several people who knew him. In the meantime, defendant Abrahams had signed a verified accusatory instrument charging Lieber with trespass on the premises of the public Library.

After removing Lieber from the Library, O'Sullivan and Gualano placed him against their police car, patted him down, handcuffed him, and placed him into the car. The officers told Lieber that he was being arrested for trespassing. When Lieber stated that the Library was a public

place, the officers allegedly insisted that it was a private place.

Upon arriving at the police station, O'Sullivan and Gualano took Lieber to a processing room near the jail cells. At that point, defendants John Doe 1, John Doe 2, and John Doe 3, Spring Valley plain clothes police officers (collectively, "John Doe officers"), arrived and allegedly told Lieber that he could cooperate with them or they would "do it our way." When Lieber, fearful that the John Doe officers would try to obtain a confession or waiver of rights, said that he would not sign anything, the three officers said Lieber did not have to sign anything and began to forcibly remove Lieber's clothing. When the John Doe officers started removing Lieber's pants, Lieber threw himself on the floor to prevent the removal of his clothing. In response to Lieber's questions about why the officers were removing his pants and the bathing suit he had on underneath, the John Doe officers allegedly said several times, "we would like to see you naked." They then removed Lieber's bathing suit, leaving him lying naked on the floor of the police station.

Without being fingerprinted or photographed, Lieber contends that he was placed by the officers in a locked cell, still naked, and without his eyeglasses. Twenty to thirty minutes later, one of the three John Doe officers hung Lieber's bathing suit on the bars of Lieber's cell. When Lieber did not respond, about a half minute later one of the John Doe officers removed the suit without comment. Although Lieber alleges that he repeatedly asked the officers why they were doing this to him and what he had done wrong, he received no response.

Lieber contends that he was left naked in the cell for approximately two to two and one-half hours, in full view of a number of police personnel and a prisoner who was escorted past the cell. Finally, one of the three John Doe officers returned Lieber's clothes item by item through the cell bars. Lieber refused to take his clothing,

and demanded that a lawyer or rabbi be summoned to view him in his current state.

In the end, Lieber's clothes were returned to him, he put them on, and was released from the cell. When he refused to leave the police station until a rabbi or other impartial observer came to see what had been done to him, Officer O'Sullivan or Gualano allegedly physically pushed and kicked Lieber out into the lobby of the police station. When Lieber refused to accept the court appearance papers handed to him, O'Sullivan or Gualano thrust the papers into Lieber's pocket as he was forced into the lobby.

The following day, July 30, 1996, Library Director Wolven by letter formally banned Lieber from the Library for six months, claiming that on July 25, Lieber had behaved in a harassing and threatening manner to library patrons and staff, and that on July 29 he had interrupted a children's program. Wolven's letter further stated, "Should another incident occur after the banning period is complete, and you have been permitted to return to the Library, you will be barred for good."

Lieber appeared in court in response to the summons. When no complaining witnesses appeared from the Library or police department, the charges against him were dismissed. On December 10, 1996, an administrative hearing was held concerning the charges against Lieber. On December 23, 1996, the Library Board of Trustees determined "in the spirit of compassion" to reinstate Lieber to his right of access to the library.

Lieber alleges that the July 29 incident and the treatment he allegedly suffered at the hands of the Spring Valley police severely traumatized him and caused him extreme shame, humiliation, depression, and emotional distress. He seeks a judgment declaring that defendants' actions and conduct violated his rights under the First, Fourth, and Fourteenth Amendments, and the Due Process Clause of the United States Constitution, the Americans with Disabilities Act, § 504 of the Rehabilitation Act of 1973. He also asserts claim for false arrest and false imprisonment, intentional infliction of emotional distress, prima facie tort, and assault and battery. In addition, Lieber seeks damages, attorneys' fees, and injunctive relief enjoining the Library defendants from illegally harassing or intimidating him, or from excluding him from the Library.

## DISCUSSION

*Notice of Claim Against Municipal Defendants*

Defendants contend that Lieber's claims for intentional infliction of emotional distress, prima facie tort, and assault and battery (Claims 12, 13, and 14) are barred by Lieber's failure to comply with the New York State notice of claim provisions under New York General Municipal Law § 50 *et seq.*[1]

General Municipal Law § 50–e(1)(a) provides: "In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, ... the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises." The statute further provides: "Service of the notice of claim upon an officer, appointee or employee of a public corporation shall not be a condition precedent to the commencement of an action or

---

1. Defendants move to dismiss Lieber's entire amended complaint due to 1) undue delay in making the application to amend, 2) futility of the amendment, and 3) prejudice to the defendants. On August 27, 1998, however, this Court specifically granted Lieber leave to serve his amended complaint. While Lieber apparently served two versions of his amended complaint on August 31, 1998, noting that the later version "supercedes all prior versions," defendants have pointed out no differences between the later served complaint and the one specifically authorized by this Court. Accordingly, defendants' motion to dismiss Lieber's entire amended complaint is denied.

special proceeding against such person." N.Y. General Municipal Law § 50–e(1)(b).

In this case it is undisputed that on October 9, 1996, Lieber, acting *pro se*, timely served a notice of claim on the Village. This notice of claim stated:

> July 29, 1996, Spring Valley Police Station, 200 N. Main Street, Spring Valley, New York. Claimant was falsely arrested and unlawfully imprisoned for "trespass" in the Finkelstein Memorial Library. Further, claimant was strip-searched and left naked in a jail cell for approximately two (2) hours, in violation of claimant's Fourth Amendment right against unreasonable search and seizure.

The notice of claim claimed damages and injuries of:

> Extreme embarrassment, humiliation, pain and suffering, infliction of emotional distress, unlawful imprisonment, battery, medical costs, legal fees and disbursements and punitive damages.

Defendants contend that because Lieber did not serve and file a notice of claim against the individual municipal defendants within the ninety day period prescribed by the statute, and did not move for leave to file a late notice of claim, Lieber's state law claims must be dismissed. Defendants also contend that Lieber's notice failed to assert claims for intentional infliction of emotional distress, prima facie tort, or assault and battery.

█ The test of the sufficiency of a notice of claim is whether it includes enough information to enable the municipality to investigate the claim adequately. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). The purpose of a notice of claim is "to afford the public corporation the opportunity 'to locate the defect, conduct a proper investigation, and assess the merits of the claim.'" *Frazier v. City of New York*, No. 96 Civ. 3345(HB), 1997 WL 214919, *2 (S.D.N.Y. Apr.24, 1997) (quoting *Carhart v. Village of Hamilton*, 190 A.D.2d 973, 594 N.Y.S.2d 358, 359 (3d Dept.1993)) (other citations omitted). A theory of liability not mentioned in the notice of claim generally may not be asserted in a subsequent lawsuit. *Jewell v. City of New York*, No. 94 Civ. 5454(DLC), 1995 WL 86432, *1 (S.D.N.Y. Mar.1, 1995).

█ In this case, especially taking into account plaintiff's *pro se* status, this Court finds that defendants had sufficient notice of Lieber's claims. *See, e.g., Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997) (holding *pro se* pleadings to less stringent standard than those filed by counsel). Indeed, Lieber's claim for damages in his notice of claim mentions intentional infliction of emotional distress and assault and battery, the causes of action challenged here. These causes of action stemmed from the alleged false arrest and imprisonment set forth in Lieber's notice of claim. In addition, under the plain language of § 50–e(1)(b) of the statute, Lieber's failure to file a notice of claim against the individual municipal defendants does not warrant dismissal of his claims. Defendants' motion to dismiss Lieber's intentional infliction of emotional distress and assault and battery claims on these grounds is denied.

█ A claim for prima facie tort, however, requires that a plaintiff plead special damages. *Idaho Potato Commission v. M & M Produce Farms & Sales*, 35 F.Supp.2d 313, 323 (S.D.N.Y.1999); *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142–43, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985). As Lieber has nowhere in his complaint pleaded special damages, defendants' motion to dismiss Lieber's claim for prima facie tort is granted. Claim thirteen is therefore dismissed.

*Relation Back Doctrine*

Defendants contend that the institution of the action against the newly added municipal defendants (Spring Valley Police Department, Spring Valley Police Chief Howard Golden, and five Spring Valley Police Officers) does not relate back to the original action against the Village, and con-

sequently claims against the additional defendants are time barred.

Fed.R.Civ.P. 15(c) governs amendments that add additional defendants. Fed. R.Civ.P. 15(c)(1) provides: "relation back is permitted by the law that provides the statute of limitations applicable to the action." The 1991 Advisory Committee Notes to that rule state:

> This provision is new. It is intended to make it clear that the rule will not apply to preclude any relation back that may be permitted under the applicable limitations period. Generally, the applicable limitations law will be state law.... Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relations back than the one provided in this rule, it should be available to save the claim.

Thus, if a state's rules regarding relation back are less rigorous than the federal rules, state principles apply.

CPLR § 203(b)(1), the New York relation back rule, provides: "In an action which is commenced by service, a claim asserted in the complaint is interposed against the defendant or a co-defendant united in interest with such defendant when: (1) the summons is served upon the defendant." New York courts have interpreted this provision to require that: 1) both claims arose out of the same conduct, transaction, or occurrence; 2) the new party is united in interest with the original defendant, and can thus be charged with notice of the institution of the action without prejudice to the new party; and 3) the new party know or should have known that, but for a mistake by plaintiff in failing to identify all the proper parties, the action would have been brought against the additional party as well. *Buran v. Coupal*, 87 N.Y.2d 173, 179, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995). *See also Mondello v. New York Blood Center—Greater New York Blood Program*, 80 N.Y.2d 219, 226, 590 N.Y.S.2d 19, 604 N.E.2d 81 (1992) (citing *Brock v. Bua*, 83 A.D.2d 61, 443 N.Y.S.2d 407 (2d Dept.1981)).

In this case, defendants do not dispute that the addition of the new defendants would satisfy the first two prongs of the *Buran* test. Defendants contend, however, that Lieber cannot show a mistake in "failing to identify" the proper parties; rather, defendants argue that Lieber simply failed to name the new defendants in the original complaint.

■ As noted above, Lieber's original *pro se* complaint cited his alleged false arrest and unlawful imprisonment at the Spring Valley Police Station, as well as the strip-search he contends was performed there. Given the allegations in the original complaint and Lieber's *pro se* status at the time of its filing, the Spring Valley Police Department and the officers involved should have anticipated being named as additional parties in the complaint. There is no indication that Lieber's omission of the newly added defendants from the original complaint was in any way purposeful; rather, Lieber likely did not know that he needed to name the police department and its members in order to pursue his false arrest and imprisonment claims. *See, e.g., Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 37 (2d Cir.1996) (allowing relation back where *pro se* litigant failed to name individual defendants in § 1983 action). Accordingly, defendants' motion to dismiss the newly added defendants from the complaint is denied.

*Statute of Limitations*

New York Civil Practice Law and Rules (CPLR) § 215 provides: "The following actions shall be commenced within one year: ... 3. an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law." N.Y. CPLR § 215(3). On the other hand, however, General Municipal Law § 50–i provides: "No action or special proceeding

shall be prosecuted or maintained against a ... village ... for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such ... village ... unless (a) notice of claim shall have been made and served upon the ... village ... in compliance with section fifty-e of this chapter, ... and (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." Section 50–i(2) provides: "This section shall be applicable notwithstanding any inconsistent provisions of law, general, special or local, or any limitation contained in the provisions of any city charter." Finally, New York General Construction Law § 37–a defines "personal injury" to include "libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another."

Defendants argue that Lieber's twelfth, thirteenth, and fourteenth claims for intentional infliction of emotional distress, prima facie tort, and common law assault and battery are barred under New York's one-year statute of limitations for intentional torts.[2] Lieber filed his original complaint on October 22, 1997, within the one year and ninety day time period prescribed by the General Municipal Law, but after the one year period set forth in CPLR § 215. Defendants contend that despite the language of the General Municipal Law allowing a one year and ninety day statute of limitations for actions against a municipality, CPLR § 215(3)'s one-year statute of limitations controls Lieber's state law claims.

New York federal and state courts have applied the statute of limitations for intentional torts against a municipality with conflicting results. *See, e.g., Barnett v.*

*Dillon,* 890 F.Supp. 83, 87 (N.D.N.Y.1995) (stating, "a one year and ninety-day period for filing suit against municipalities and their employees clearly applies in this case"); *Douglas v. County of Tompkins,* No. 90–CV–841, 1995 WL 105993, *5 (N.D.N.Y. Mar.2, 1995) (applying one year and ninety day limitations period to claim for intentional infliction of emotional distress against municipal defendants); *Rosado v. City of New York,* 713 F.Supp. 124, 126 (S.D.N.Y.1989) (recognizing, in dicta, that § 50–i provides for a one year and ninety day limitations period for intentional torts, and overrides inconsistent provisions of law, including CPLR § 215(3)); *Clark v. City of Ithaca,* 235 A.D.2d 746, 652 N.Y.S.2d 819, 820–21 (3d Dept.1997) (holding one year and 90–day requirement of General Municipal Law § 50–i applicable in suit alleging 1) use of excessive force, assault, and negligent training, 2) assault and battery, 3) false arrest, 4) false imprisonment, 5) malicious prosecution, and 6) Federal civil rights violations, stating, "Only where a finding is made that the police officer's acts were clearly not within the scope of employment is the one-year Statute of Limitations of CPLR 215(3) applicable."). *But see Reid v. City of New York,* 736 F.Supp. 21, 25 (E.D.N.Y.1990) (dismissing claim for assault against police officer as time barred under one year limitations period of § 215(3)); *Shapiro v. Town of Clarkstown,* 238 A.D.2d 498, 656 N.Y.S.2d 682, 683 (2d Dept.) (finding plaintiff's causes of action for false arrest and assault time-barred by one-year statute of limitations) *leave to appeal denied,* 90 N.Y.2d 807, 664 N.Y.S.2d 269, 686 N.E.2d 1364 (1997); *Tumminello v. City of New York,* 212 A.D.2d 434, 622 N.Y.S.2d 714, 715 (1st Dept.1995) (dismissing plaintiff's claim for intentional infliction of emotional distress as time-barred under one year statute of limitations; defendant was not acting within scope of employment); *Go-*

---

2. As this Court has already dismissed Lieber's claim for prima facie court, that claim will not be addressed again here.

*lomb v. Westchester County Medical Center,* 201 A.D.2d 702, 608 N.Y.S.2d 290, 291 (2d Dept.1994) (applying one year statute of limitations to false imprisonment claim).

While recognizing the decisions that hold otherwise, this Court finds that in light of the language of § 37–a that specifically states that it overrides inconsistent provisions of law, and because the definition of "personal injury" found in the General Construction Law includes almost all of the intentional torts contained in CPLR § 215(3), the one year and ninety day limitations period applies to Lieber's claims for intentional infliction of emotional distress and assault and battery. Accordingly, defendants' motion to dismiss on the grounds that Lieber's state law claims are time barred is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied in part and granted in part. The Clerk of the Court is directed to dismiss Count Thirteen, for prima facie tort, with prejudice.

**SO ORDERED.**