Falletta v Norman (2023 NY Slip Op 05080)

Falletta v Norman

2023 NY Slip Op 05080

Decided on October 6, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 6, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., MONTOUR, GREENWOOD, NOWAK, AND DELCONTE, JJ.

700 CA 22-01294

[*1]AMY D. FALLETTA, AS EXECUTOR OF THE ESTATE OF JAMES A. FALLETTA, DECEASED, PLAINTIFF-RESPONDENT,
v
ALLYN M. NORMAN, D.O., INDIVIDUALLY AND DOING BUSINESS AS MAPLE AYER MEDICAL, ET AL., DEFENDANTS, AND DAVID M. ZLOTNICK, M.D., DEFENDANT-APPELLANT. 

GIBSON, MCASKILL & CROSBY, LLP, BUFFALO (MELINDA L. GRABOWSKI OF COUNSEL), FOR DEFENDANT-APPELLANT. 
LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JOHN A. COLLINS OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Niagara County (Frank Caruso, J.), entered July 28, 2022. The order denied the motion of defendant David M. Zlotnick, M.D. to dismiss the amended complaint against him. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In February 2016, James A. Falletta (decedent) arrived at the emergency department at Millard Fillmore Suburban Hospital (Millard Fillmore) complaining of burning in his chest and shortness of breath. Defendant Kaleida Health (Kaleida) owned and operated Millard Fillmore and Buffalo General Medical Center (Buffalo General). Shortly after decedent's arrival at Millard Fillmore, one of the examining physicians at Millard Fillmore called an interventional cardiologist who was on call at Buffalo General and available to physicians at other hospitals owned and operated by Kaleida. Decedent's medical records included a note that an interventional cardiologist was contacted, but the name of the physician was not listed. Decedent died of a myocardial rupture due to myocardial infarction the day after he arrived at Millard Fillmore. The executor of decedent's estate commenced this medical malpractice and wrongful death action almost two years later, in January 2018. Plaintiff named as a defendant "John Doe I," who was described as "the interventionalist contacted by" one of the examining physicians at Millard Fillmore. In November 2021, in response to plaintiff's request, Kaleida identified the on-call interventional cardiologist as David M. Zlotnick, M.D. Supreme Court granted plaintiff's subsequent motion for leave to file a supplemental summons and amended complaint to add Zlotnick as a defendant. After Zlotnick was served with the amended complaint, he moved to dismiss the amended complaint against him as time-barred pursuant to CPLR 3211 (a) (5). The court denied the motion, and Zlotnick now appeals.
We agree with Zlotnick that plaintiff failed to establish that Zlotnick should be named in place of the John Doe I defendant pursuant to CPLR 1024. Plaintiff did not serve Zlotnick within 120 days of filing the summons and complaint and did not seek leave to extend the time for service (see Walker v Hormann Flexon, LLC, 153 AD3d 997, 997 [3d Dept 2017]; cf. Rogers v Dunkirk Aviation Sales & Serv., Inc., 31 AD3d 1119, 1120 [4th Dept 2006]; see generally Bumpus v New York City Tr. Auth., 66 AD3d 26, 31 [2d Dept 2009]; Luckern v Lyonsdale Energy Ltd. Partnership, 229 AD2d 249, 254 [4th Dept 1997]). In addition, she failed to show that she made "timely and diligent efforts to ascertain the identity of [Zlotnick] prior to the expiration of the statute of limitations" (Walker v Glaxosmithkline, LLC, 161 AD3d 1419, 1420 [3d Dept 2018]; see Wilmington Trust, N.A. v Shasho, 197 AD3d 534, 536 [2d Dept 2021]).
We nevertheless reject Zlotnick's contention that the court erred in denying his motion inasmuch as we conclude that plaintiff raised a triable issue of fact with respect to the applicability of the relation back doctrine. "On a motion to dismiss pursuant to CPLR 3211 (a) (5) on statute of limitations grounds, the defendant has the initial burden of establishing that the limitations period has expired" (Rider v Rainbow Mobile Home Park, LLP, 192 AD3d 1561, 1561-1562 [4th Dept 2021]). It is undisputed that Zlotnick met that burden here. The burden thus shifted to plaintiff to raise an issue of fact whether the relation back doctrine applied (see Marcotrigiano v Dental Specialty Assoc., P.C., 209 AD3d 850, 851 [2d Dept 2022]; see generally Stepanian v Bed, Bath, & Beyond, Inc., 207 AD3d 1182, 1183 [4th Dept 2022]; Kulback's Inc. v Buffalo State Ventures, LLC, 197 AD3d 890, 891 [4th Dept 2021]; U.S. Bank N.A. v Brown, 186 AD3d 1038, 1039 [4th Dept 2020]).
" 'In order for a claim asserted against a new defendant to relate back to the date the claim was filed against another defendant, the plaintiff[ ] must establish that (1) both claims arose out of the same conduct, transaction, or occurrence; (2) the new defendant is united in interest with the original defendant, and by reason of that relationship can be charged with notice of the institution of the action such that [the new defendant] will not be prejudiced in maintaining [a] defense on the merits; and (3) the new defendant knew or should have known that, but for a mistake by the plaintiff[ ] as to the identity of the proper parties, the action would have been brought against [the new defendant] as well' " (May v Buffalo MRI Partners, L.P. [appeal No. 2], 151 AD3d 1657, 1658 [4th Dept 2017]; see Buran v Coupal, 87 NY2d 173, 178 [1995]). "[T]he 'linchpin' of the relation back doctrine [is] notice to the defendant within the applicable limitations period" (Buran, 87 NY2d at 180; see Kirk v University
OB-GYN Assoc., Inc., 104 AD3d 1192, 1194 [4th Dept 2013]; Cole v
Tat-Sum Lee, 309 AD2d 1165, 1167 [4th Dept 2003]).
Zlotnick does not dispute that the first prong is met here, and we reject his contention that plaintiff failed to raise an issue of fact with respect to the second and third prongs. "The second prong, unity of interest, is satisfied when the interest of the parties in the subject-matter is such that they [will] stand or fall together and that the judgment against one will similarly affect the other" (May, 151 AD3d at 1658 [internal quotation marks omitted]; see Johanson v County of Erie, 134 AD3d 1530, 1531 [4th Dept 2015]). "There is unity of interest where the defenses available . . . will be identical, [which occurs] . . . where one is vicariously liable for the acts of the other" (May, 151 AD3d at 1658-1659 [internal quotation marks omitted]; see Norman K. v Posner, 207 AD3d 1228, 1230 [4th Dept 2022]).
Zlotnick was not an employee of Kaleida, but plaintiff alleged that he was an agent of Kaleida and that Kaleida was thus liable for his actions based on the theory of respondeat superior. Hospitals are liable for the negligence of their employees but are not necessarily liable for the acts of independent physicians, even if they are affiliated with the hospital (see Hill v St. Clare's Hosp., 67 NY2d 72, 79 [1986]). The determination of whether vicarious liability applies "generally turns . . . on agency or control in fact" or apparent or ostensible agency (id.). " 'In order to create such apparent agency, there must be words or conduct of the principal, communicated to a third party, which give rise to the appearance and belief that the agent possesses the authority to act on behalf of the principal . . . , [and] the third party must accept the services of the agent in reliance upon the perceived relationship between the agent and the principal' " (Pasek v Catholic Health Sys., Inc., 195 AD3d 1381, 1382 [4th Dept 2021]; see Greene v Hellman, 51 NY2d 197, 204 [1980]). " 'In the context of a medical malpractice action against a hospital, the patient must have reasonably believed that the [treating] physicians . . . were provided by the hospital or acted on the hospital's behalf' " (Pasek, 195 AD3d at 1382). Where, as here, "a patient presents . . . at an emergency room, seeking treatment from the hospital and not from a particular physician of the patient's choosing, the hospital may be held vicariously liable for the malpractice of a physician who is an independent contractor" under a theory of apparent agency (Litwak v Our Lady of Victory Hosp. of Lackawanna, 238 AD2d 881, 881 [4th Dept 1997]; see Lewis v Sulaiman, 217 AD3d 1443, 1445 [4th Dept 2023]; Mignone v Nyack Hosp., 212 AD3d 802, 803-804 [2d Dept 2023]; Cole, 309 AD2d at 1167; Mduba v Benedictine Hosp., 52 AD2d 450, 453 [3d Dept 1976]).
In opposing Zlotnick's motion, plaintiff relied on evidence submitted by Zlotnick himself that raises a triable issue whether Kaleida is vicariously liable for Zlotnick's acts under a theory of apparent agency (see Lewis, 217 AD3d at 1445-1446; Syracuse v Diao, 272 AD2d 881, 881-[*2]882 [4th Dept 2000]; Litwak, 238 AD2d at 881; Casucci v Kenmore Mercy Hosp., 144 AD2d 910, 910-911 [4th Dept 1988]). Decedent presented to Millard Fillmore and was subsequently transferred to Buffalo General. Those hospitals furnished the physicians who treated decedent, and decedent could properly assume that those physicians were acting on behalf of the hospitals. Zlotnick was the interventional cardiologist for Buffalo General who was on call that day and was thus the one provided by Buffalo General to speak with one of Millard Fillmore's examining physicians when that physician needed a consultation. Based on that evidence, plaintiff raised a triable issue of fact whether Kaleida and Zlotnick are united in interest, and thus there is a triable issue of fact whether the second prong of the relation back doctrine is satisfied (see Marcotrigiano, 209 AD3d at 852; see also Mignone, 212 AD3d at 803-804; Cole, 309 AD2d at 1167).
With respect to the third prong, plaintiff established that her failure to include Zlotnick was a mistake and not the result of a strategy to obtain a tactical advantage (see Norman K., 207 AD3d at 1230; May, 151 AD3d at 1659). The third prong "focuses, inter alia, on whether the defendant could have reasonably concluded that the failure to sue within the limitations period meant that there was no intent to sue that person at all and that the matter has been laid to rest as far as [that defendant] is concerned" (Mignone, 212 AD3d at 804 [internal quotation marks omitted]). Plaintiff raised an issue of fact whether Zlotnick should have known that the action would be asserted against him and that he had notice within the applicable limitations period. The complaint specifically listed the interventional cardiologist contacted by one of the examining physicians as the John Doe I defendant. Thus, it cannot be said that Zlotnick "could have reasonably concluded that the plaintiff['s] failure to sue him within the applicable limitations period meant that [she] had no intent to sue him" (Alvarado v Beth Israel Med. Ctr., 60 AD3d 981, 983 [2d Dept 2009]; see May, 151 AD3d at 1659).
Entered: October 6, 2023
Ann Dillon Flynn
Clerk of the Court