Alexander v Medalliance Med. Health Servs., Inc. (2024 NY Slip Op 50423(U))

[*1]

Alexander v Medalliance Med. Health Servs., Inc.

2024 NY Slip Op 50423(U)

Decided on April 15, 2024

Supreme Court, Bronx County

Capella, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 15, 2024
Supreme Court, Bronx County

Isha Alexander and EUGENE ALEXANDER, Plaintiffs,

against
Medalliance Medical Health Services, Inc., AVICENNA ASC, INC, 
 and CARLOS FRIAS, M.D., Defendants.

Index No. 25382/18

Plaintiffs' Attorney
Richard DePonto, Esq.
Bailly and McMillan, LLP
707 Westchester Avenue, Suite 405
White Plains, NY 10604
(914)684-9100
Medalliance' Attorney
Law Offices of Gabriel Marano, LLP
100 Quentin Roosevelt Blvd.
Garden City, NY 11530
(516)542-1000

Dr. Frias' Attorney
James L. Fant, Esq.
Hardin, Kundla, McKeon & Poletto, PA
100 Williams Street
New York, NY 10038
(212)571-0111

Joseph E. Capella, J.

The following papers numbered 1 to 3 read on this motion noticed on December 8, 2023, and duly submitted on January 31, 2024.
PAPERS              
NUMBERED
NOTICE OF MOTION AND AFFIDAVITS 1
ANSWERING AFFIDAVIT AND EXHIBITS 2
REPLY AFFIDAVIT AND EXHIBITS 3
UPON THE FOREGOING CITED PAPERS, THE DECISION/ORDER IN THIS MOTION IS AS FOLLOWS:
Defendant, Carlos Frias, M.D., seeks dismissal of plaintiffs' amended complaint dated April 10, 2023, which alleges medical malpractice and loss of services, on the theory that it is time barred by the applicable statute of limitations. (CPLR 3211(a)(5).) Plaintiff, Isha Alexander, was in a motor vehicle accident on April 19, 2015, where she sustained injuries including, a rotator cuff tear and other internal derangement to her left shoulder. Following months of physical therapy treatment, Mrs. Alexander was referred to Dr. Randall Ehrlich who recommended that she undergo an arthrosporic procedure, provided that she received clearance from a cardiologist. On October 17, 2015, a cardiologist, Dr. Donald Wallerson, cleared Mrs. Alexander for surgery, and on November 13, 2015, she went with her husband and daughter to receive a pre-surgical nerve block from an anesthesiologist. Following the nerve block, Mrs. Alexander fell into a coma and was transported by ambulance to Montefiore Medical Center, where she stayed for four days and treated for a probable cervical vascular accident. Mrs. Alexander does not know the name of the anesthesiologist who performed the nerve block procedure, she had never been treated by him before and was not told in advance who would perform the procedure. She did describe the anesthesiologist as a white male. Additionally, it is unknown if the procedure took place in the facilities of co-defendant, Medalliance Medical Health Services, Inc. (Medalliance), or Avicenna ASC, Inc. (Avicenna), as they are both in the same location. Mrs. Alexander alleges that a Medalliance employee signed her in for the procedure, and that there were signs representing that the facility was Medalliance.
On May 8, 2018, plaintiffs commenced this instant action against Medalliance and the unknown anesthesiologists who was named as "John Doe, M.D." Plaintiffs attempted to determine the identity of the anesthesiologist by requesting records from Medalliance, but Medalliance responded that they have no records related to the nerve block procedure. On January 7, 2020, counsel for Medalliance forwarded a letter indicating that the nerve block procedure was performed by Dr. Susan Yu at Avicenna. Plaintiffs then requested the entire file related to the care and treatment of Mrs. Alexander at Avicenna, and Avicenna responded by stating that they have no records for the nerve block procedure. On July 6, 2022, Medalliance notified plaintiffs that Dr. Carlos Frias performed the nerve block procedure, not Dr. Yu. And on May 15, 2023, plaintiffs' motion to amend the caption to add Avicenna and substitute Dr. Frias as the individual defendant was granted.
A medical malpractice action must be commenced within two years and six months of the date of accrual, which is the date the malpractice allegedly takes place, (CPLR § 214-a), and here the original summons and complaint was timely commenced after the nerve block procedure. Obviously, the amended complaint is not timely for statute of limitation purposes; however, plaintiffs are relying on the "relation back" doctrine to avoid dismissal based on same. (CPLR § 203(c); Buran v Coupal, 87 NY2d 173 [1995].) The relation back doctrine allows a claim asserted against a defendant added to an amended complaint to relate back to claims previously asserted against a co-defendant for statute of limitations purposes where the defendants are united in interest. (CPLR § 203(c); Buran, 87 NY2d 173.) The doctrine was first enunciated by the Second Department in Brock v Bua, (83 AD2d 61 [1981]), then adopted by the Court of [*2]Appeals in Mondello v NY Blood, (80 NY2d 219 [1992]), and subsequently modified in Buran, (87 NY2d 173). The doctrine applies where (1) the claims arise out of the same conduct, transaction or occurrence, (2) the new party is united in interest with the original defendant(s), and by reason of that relationship can be charged with such notice of the institution of the action that the new party will not be prejudiced in maintaining its defense on the merits by the delay, and (3) the new party knew or should have known that, but for a mistake by plaintiff as to the identity of the proper parties, the action would have been brought against that party as well (Buran, 87 NY2d 173; Austin v Interfaith, 264 AD2d 702 [2d Dept 1999]).
According to Dr. Frias, plaintiffs are unable to satisfy the first condition (i.e., same conduct/occurrence) of the relation back doctrine as the co-defendant, Medalliance, alleges that no one on its staff administered the nerve block on November 13, 2015. In other words, the administering of a nerve block by an individual unrelated to Medalliance and the surgery contemplated by Medalliance are not related. Dr. Frias also alleges that he and Medalliance are not united in interest as he was not an employee of Medalliance at the time in question. (Mercer v 203, 300 AD2d 105 [1st Dept 2002] [unity of interest will not be found unless there is some relationship between the parties.].) Lastly, Dr. Frias alleges that plaintiffs did not seek to name him as a co-defendant until May 2023, some five years after commencing the instant action, and are unable to demonstrate that he knew or should have known that he would be named as a defendant. (Cracolici v Shah, 127 AD3d 413 [1st Dept 2015].) Therefore, based on the aforementioned, Dr. Frias argues that plaintiffs are unable to utilize the relation back doctrine.
As previously mentioned, when plaintiffs timely commenced the instant action, they were unaware of the identity of the doctor who administered the nerve block on November 13, 2015, and therefore utilized the pseudonym "John Doe, M.D." (CPLR § 1024.) According to plaintiffs, Medalliance waited two years to identify Avicenna as the facility that performed the nerve block, and incorrectly identified Dr. Yu as the physician who administered same. Plaintiffs attempted to obtain records from Avicenna, to which the response was that no records exist. It was not until July 2022 that Medalliance identified Dr. Frias as the "John Doe, M.D.," after which plaintiffs subpoenaed Dr. Frias and his office confirmed that he was the author of a handwritten nerve block note. The complaint was then amended in May 2023 to include Avicenna and Dr. Frias. According to plaintiffs, they recently learned that Medalliance and Avicenna share a parent and/or subsidiary corporation relationship, and the two entities share the same owner (Sean Daneshvar), President (Sean Daneshvar), Chief Executive Officer (Shahriar Daneshvar), Medical Director (Eteri Tetrok) and administrator (Geraldine Maraj).
Plaintiffs also learned that Avicenna's executives maintain Medalliance e-mail addresses on behalf of Avicenna and represented to NYS Department of Health that Avicenna's phone number was the same as Medalliance's. In addition, Avicenna pays for the insurance of Medalliance employees, Medalliance is a guarantor of an Avicenna loan and is listed as both a liability and asset on Avicenna's financial statements. Plaintiffs correctly inquire as to why, given the close relationship between Medalliance and Avicenna, it took over four years for Medalliance to identify Dr. Frias. Returning to the relation back doctrine, and contrary to Dr. Frias' suggestion otherwise, the claims in question do arise out of the same conduct or occurrence, and that is the administration of a pre-surgical nerve block on November 13, 2015, at the Medalliance and/or Avicenna facility. In addition, given plaintiffs recent discovery of what [*3]appears to be a close relationship between Medalliance and Avicenna, plaintiffs should be allowed to further investigate whether Dr. Frias, Medalliance and Avicenna are united in interest. Plaintiffs should be allowed to inquire as to Dr. Frias' employment status with Medalliance and Avicenna, and how often he does work for either facility. For example, has he ever administered nerve blocks for Medalliance patients before November 13, 2015, and if so, how was this scheduled and how often did this occur.
Lastly, further discovery is need to determine whether Dr. Fias should have known that, but for a mistake by plaintiffs as to his identity, he would have been named as a defendant in the initial Medalliance action. The limited discovery so far has uncovered the handwritten note by Dr. Frias which indicates that a nerve block was administered on November 13, and that Mrs. Alexander lost consciousness and was transported to the ER. To the extent that Dr. Frias, Medalliance and Avicenna have a close relationship, and given the aforementioned note, one could argue that Dr. Frias should have known that he would also have been specifically named in the initial action. Given the aforementioned, the Court is in agreement with plaintiffs who argue that it would be fundamentally unfair to dismiss this action at this stage without allowing further discovery, especially given what they describe as defendants' delay tactics. (Meyers v Becker, 202 AD3d 627 [1st Dept 2022; Gedula v Lightstone, 150 AD3d 583 [1st Dept 2017].) Therefore, the instant motion by Dr. Frias is denied without prejudice to renew once discovery is complete. Plaintiffs are directed to serve a copy of this decision with notice of entry upon all sides within 20 days of receipt of copy of same. This constitutes the decision of this court.
Dated 4/15/24
Joseph E. Capella, J.S.C.