■ O. L. BIBEAU, Respondent, v BARNEY WARD, Appellant.
[645 NYS2d 107] —Cardona, P. J.

On September 2, 1988, plaintiff entered into a contract with defendant by which the latter was to, *inter alia*, find and purchase horses suitable for training as jumping horses. The contract also required defendant to "sell said horses as soon as possible at a profit". According to plaintiff, defendant failed to perform his obligations under the contract. In this action, plaintiff alleged breach of contract, fraud and negligence, and sought both compensatory and punitive damages. At the trial, Supreme Court found in favor of plaintiff and awarded compensatory damages of $132,460.25 as well as punitive damages of $100,000. Defendant appeals.

Supreme Court determined that defendant not only breached the contract but also fraudulently induced plaintiff to enter into the contract and was grossly negligent. Upon a review of the record, however, we are constrained to conclude that while the evidence supports the finding of a breach of contract, it is insufficient to warrant a finding of either gross negligence or fraud. In reaching this conclusion, we note that insofar as this was a nonjury trial, we may weigh the evidence and grant the judgment, which, in our view, should have been granted by the trial court (*see, Wirth v State of New York,* 161 AD2d 1042, *appeal dismissed* 76 NY2d 876, *lv denied* 77 NY2d 802; *Jacobs v Facilities Dev. Corp.,* 118 AD2d 971, *lv denied* 68 NY2d 603).

Turning first to the fraud cause of action, we note that such a cause of action does not lie where, as here, the claim is based upon the same allegations contained in the breach of contract cause of action (*see, Guerrero v Valiando,* 197 AD2d 667). Furthermore, plaintiff's allegations of scienter are not suf-

ficient to transform what is essentially a breach of contract action into a claim of fraud where the fraud has to do with the breaching party's abilities and intentions (*see, Green v Dolphy Constr. Co.*, 187 AD2d 635). Plaintiff contends that his fraud claim is separate from the contract claim because defendant's misrepresentation about where the horses were being purchased induced plaintiff to enter the agreement. We disagree. Even accepting that defendant made this misrepresentation, that does not save plaintiff's fraud cause of action.

Initially, as Supreme Court noted, there was no provision in the contract about where the horses were to be purchased. In addition, the element of reliance needed to sustain a claim of fraud (*see, Crafton Bldg. Corp. v St. James Constr. Corp.*, 221 AD2d 407) is lacking in this case. Plaintiff's testimony indicated that he did *not* decide to invest with defendant on the basis that the horses were coming from Germany. We note that the horses actually came from Germany; it was only their date of arrival in this country that was allegedly misrepresented. Nor did plaintiff make out a claim of constructive fraud. Even accepting that a fiduciary relationship existed between the parties, that will substitute only for the element of scienter (*see, Franco v English*, 210 AD2d 630), not for reliance. Under these circumstances, plaintiff failed to sustain his claim of fraud.

In reference to the breach of contract claim, the contract provided that defendant was to select the horses and that plaintiff was to "acquire title to said horse or horses". It was also specifically provided that defendant would train the horses and pay for their care, maintenance and boarding. The evidence revealed that none of the three horses purchased was ever titled in plaintiff's name. Defendant also admitted that he placed the horses out on consignment and did not pay for their care or maintenance. We agree with Supreme Court's conclusion that this conduct by defendant violated the terms of the contract. The evidence also supports the court's conclusion that defendant never endeavored to sell the horses at a profit. The fact that the horses were sent out on consignment with only defendant's instruction to sell them for a certain amount did not, in our view, satisfy defendant's obligation to "endeavor to sell [the] horses as soon as possible at a profit". Based on this evidence and deferring to the trial court's credibility assessments (*see, J & J Structures v Callanan Indus.*, 215 AD2d 890, *lv denied* 86 NY2d 708), it cannot be said that Supreme

Court erred in concluding that defendant breached the contract.*

Having determined that defendant did, in fact, breach the contract, the next question is whether the award of damages was proper. Supreme Court grounded the punitive damage award of $100,000 on its finding of fraud. Because the proof failed to establish fraud, plaintiff's award of such punitive damages is limited to the finding that the contract was breached. Punitive damages may be recoverable under a breach of contract claim; however, such damages are limited to those instances where it is "necessary to vindicate a public right" (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 315). In this case, defendant's conduct was directed only at plaintiff and not the public. We, therefore, find that the award of punitive damages was in error.

As to compensatory damages, "where there has been a violation of a contractual obligation the injured party is entitled to fair and just compensation commensurate with [the party's] loss" (*Terminal Cent. v Modell & Co.*, 212 AD2d 213, 218). Damages must be reasonably contemplated by the parties at the time of the contract and definitely related to the breach (*see, Borden v Chesterfield Farms*, 27 AD2d 165, 167). The injured party is to be placed in the same position as that party would have been if the contract had not been breached (*see, Rich-Haven Motor Sales v National Bank*, 163 AD2d 288, 289, *lv denied* 76 NY2d 709; *Brown v Lockwood*, 76 AD2d 721, 742-743).

In this case, with respect to the compensatory award based on lost profits, the record reveals that plaintiff sold one of the horses, Bounder, in December 1993 for $1,000 and the second horse, Snuckyboy, in October 1990 for $14,000. He testified that although he tried to sell the third horse, Graciano, for $30,000, he received no offers and the horse eventually died in 1992. In our view, Supreme Court erred in awarding plaintiff the $90,000 he paid for the horses minus the $15,000 he

---

* Although we agree with Supreme Court that defendant breached the contract, the evidence does not support the court's conclusion that defendant's actions were grossly negligent. In addition, plaintiff's allegations of negligence were, as with the fraud cause of action, based on the same acts as alleged for the breach of contract claim. Breach of a contract does not give rise to tort liability unless a legal duty independent of the contract itself has been violated (*see, Teller v Bill Hayes, Ltd.*, 213 AD2d 141, *lv dismissed in part, lv denied in part* 87 NY2d 937). Here, plaintiff did not establish any breach of an independent duty so as to give rise to a negligence cause of action (*see, Merritt v Hooshang Constr.*, 216 AD2d 542; *Phillips v Young Men's Christian Assn.*, 215 AD2d 825).

received on the sale of Bounder and Snuckyboy. Arguably, defendant's failure to train the horses resulted in plaintiff losing profits. However, although profits may be awarded even though the amount cannot be determined with absolute certainty, they cannot be contingent or conjectural (*see, R & I Elecs. v Neuman*, 66 AD2d 836). Here, the evidence was too uncertain to warrant such an award (*see, Freund v Washington Sq. Press*, 34 NY2d 379, 384). Plaintiff claims that it was defendant's own failure to keep proper records that rendered plaintiff unable to prove his losses. He contends that defendant actually paid less than the $90,000 for the three horses and that he made a profit when he sold the horses to plaintiff for that amount. Even accepting that assertion, it is not sufficient evidence to prove what the horses were worth at the time of plaintiff's purchase. Although plaintiff sold the horses at a loss, this alone does not show their value at the time of purchase and it was insufficient to prove that defendant's failure to train the horses himself and to pay for their care was the cause of the low prices that plaintiff ultimately received.

Nevertheless, we find that Supreme Court properly awarded plaintiff the costs he incurred in boarding the horses and his veterinary expenses, which totaled $15,974.42. In this regard, we note that a party may recover mitigation expenses, that is those expenses that he incurred as a result of the breach (*see, Kenford Co. v County of Erie*, 108 AD2d 132, 145, *affd* 67 NY2d 257). It is true that the parties' agreement provided that after the horses were sold by defendant, plaintiff was to reimburse defendant for the costs of caring for, maintaining and boarding the horses. Given the finding that defendant never endeavored to sell the horses at a profit, plaintiff was required to take the horses back and attempt to sell them himself. At that point the contract was terminated and the provision requiring reimbursement was no longer applicable. If defendant had complied with the terms of the agreement, plaintiff would not have had to take the horses back. Since plaintiff had to both assume the responsibility for the care of the horses as well as attempt to sell them, all because of defendant's breach, we find that plaintiff was properly awarded the expenses incurred after he repossessed the horses.

Finally, we agree with defendant that plaintiff should not have been awarded counsel fees. As a general rule, such fees may not be collected by a prevailing litigant where, as here, there is no agreement, statute or rule providing for such (*see, Matter of Thompson [S.L.T. Ready-Mix]*, 216 AD2d 656; *Matter of Timoshevich*, 133 AD2d 1011). Even accepting that mali-

cious acts of a party causing another to incur legal fees may be a basis for awarding such fees, we can find no evidence of such conduct sufficient to warrant an award of legal fees in this case (*see, Matter of Timoshevich, supra*).

Accordingly, the judgment must be modified to the extent of awarding judgment to plaintiff against defendant in the amount of $15,974.42.

Mercure, White, Casey and Spain, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, to the extent of awarding damages to plaintiff in the amount of $15,974.42, and, as so modified, affirmed.