Nicole BASS, Plaintiff,

v.

The WORLD WRESTLING FEDERA-
TION ENTERTAINMENT, INC., for-
merly known as Titan Sports, Inc.
d/b/a the World Wrestling Federation,
and Steven Lombardi, individually
and in his official capacity, Defen-
dants.

No. 99–CV–5688 (NGG).

United States District Court,
E.D. New York.

Feb. 14, 2001.

A. Kathleen Tomlinson, Farrell Fritz, P.C., Uniondale, for Plaintiff.

Laura A. Brevetti, New York City, for Defendant Lombardi.

Ivy L. Jacobson, Kirkpatrick & Lockhart, L.L.P., New York City, Jerry S. McDevitt, Mark A. Rush, & Jason L. Richey, Kirkpatrick & Lockhart, L.L.P., Pittsburgh, PA, for Defendant WWF.

*MEMORANDUM AND ORDER*

GARAUFIS, District Judge.

Plaintiff Nicole Bass brings this action against The World Wrestling Federation Entertainment, Inc. ("WWF") and Steven Lombardi, alleging sexual harassment, retaliation, sex discrimination, assault, battery, and negligence. Plaintiff has amended her complaint twice.[1] Defendants now move to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motions are granted in part and denied in part.

## I. Background

The following facts are taken from the Second Amended Complaint and are viewed in the light most favorable to Plaintiff. Plaintiff was once a successful bodybuilder and female wrestler, a former Ms. Olympia contender. The WWF noticed her accomplishments and asked her to become an employee. Through overt and implicit representations, Plaintiff was promised a successful career with the WWF. The WWF is a Delaware corporation with its principal place of business in

---

1. The original Complaint, filed September 16, 1999, alleged sexual harassment, assault, and intentional infliction of emotional distress.

**498**

Connecticut, but the WWF's initial contact with Plaintiff and several subsequent contacts were made at her home in Queens, New York. (Sec.Am.Compl.¶¶ 13–16.)

Mr. Bruce Pritchard, a WWF representative, informed Plaintiff that the wrestling matches would be scripted, staged, and predetermined before the match. Induced by these representations, Plaintiff signed a contract with the WWF and joined its employ. As part of her relationship with the WWF, Plaintiff wrestled, participated in many events, and attended training camps. All of these activities were under the direction of the WWF. Plaintiff made numerous appearances for the WWF, including some in New York. When she expressed concerns about the "character" she portrayed, the WWF promised that she would always be presented as a professional and an athlete. (*Id.* ¶¶ 17–21.)

On numerous occasions, Plaintiff was subjected to repeated and unwelcome sexual intrusions in the locker rooms at events in New York and elsewhere. She was repeatedly accosted by employees or representatives of the WWF, including Tony Guerra, Earl Hepner, Paul White, and Billy Gunn, while she was in a state of undress. Male performers were not subject to similar intrusions. (*Id.* ¶¶ 23–24.) The pattern of male employees intruding into the women's locker rooms was a practice well-known to the WWF, which failed to take any action to remedy the intrusions. (*Id.* ¶ 37.)

In a live televised event in Florida, May 10, 1999, an employee or agent of the WWF, Sean Michaels, called Plaintiff "Mister," and, when she turned her back, simulated a sexual act with his microphone directed towards her buttocks. Plaintiff was horrified and humiliated by the event. Vincent Russo, a senior executive, came to her dressing room that day to apologize and to promise that no similar indignities would occur in the future. The WWF neither took remedial actions nor instituted any policy designed to prevent such occurrences, and, in fact, Plaintiff was ha-

rassed again less than one week later. (*Id.* ¶¶ 25–27.)

The WWF directed Plaintiff to participate in the "No Mercy" tour in Manchester, England. Her travel arrangements were organized and paid for by the WWF. On May 15, 1999, she boarded the WWF flight out of John F. Kennedy International Airport. While on the flight, Steven Lombardi, an employee of the WWF, made repeated sexual overtures to Plaintiff, telling her that he loved her physique, that he was attracted to female wrestlers, and that he wanted her to touch his chest. After she refused, he groped her breasts. Many other WWF employees witnessed the altercation. When Plaintiff told Lombardi that she was reporting his conduct to the WWF, he threatened her with actions which would affect her good standing with the WWF. He also threatened her with a "receipt," a payback for being crossed. In New York, Lombardi repeatedly approached Plaintiff from behind, came in close physical contact, invaded her personal space, and threatened her with physical harm should she ever inform the WWF of the incident. Plaintiff feared that if she reported the incident she would risk physically harmful retaliation by Lombardi. She did not report the incident. Lombardi had significant authority, direction, and control over the terms and conditions of Plaintiff's work. He was present at every appearance Plaintiff made in 1999, and, on more than one occasion after the No Mercy Tour, Lombardi openly repeated the threat of a receipt in a manner which should have alerted the WWF to her situation. The WWF was well-aware of Lombardi's long-standing reputation for sexual harassment and abusive conduct. (*Id.* ¶¶ 28–36.)

One evening, Plaintiff's scripted performance involved being hit over the head with a "fixed" guitar which would shatter on impact and thus not hurt the wrestler. The guitar in this case was not fixed, and its impact caused lacerations to her head. The WWF failed to provide Plaintiff with

medical attention, allegedly because all medical staff had gone to attend to another wrestler who had received fatal injuries in a previous bout. Plaintiff later learned that the guitar was intentionally left unfixed to see how tough she was. (*Id.* ¶¶ 38–40.)

In her Second Amended Complaint, Plaintiff alleges sex discrimination, sexual harassment, and retaliation under Title VII, 42 U.S.C. §§ 2000e et seq. ("Title VII"); violations of the Equal Pay Act, 23 U.S.C. §§ 206–19 ("EPA"); sexual harassment and sex discrimination under New York Executive Law § 296 ("Executive Law"); sexual harassment and sex discrimination under the New York City Administrative Code § 8–107 ("Administrative Code"); assault and battery against Lombardi in his individual capacity; and negligence, for the WWF's failure to provide a safe working environment. She prays for compensatory damages of $20 million and punitive damages of $100 million. The WWF now moves to dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6).

## II. Motion to Dismiss Standard

In order for a party to succeed on a motion to dismiss under Rule 12(b)(6), it must be clear that the plaintiff can prove no set of facts that would establish her claim for relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). When making a determination of whether the plaintiff can prove any set of facts which would entitle her to relief, a court must assume that the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *See Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). Although the level

of proof an employment discrimination plaintiff is required to present in order to survive a motion to dismiss is minimal, dismissal is appropriate if the plaintiff fails to meet that burden. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709, 712 (2d Cir.1998).

## III. Discussion

Defendants argue for dismissal on several grounds. These will be discussed in turn.

### A. First Cause of Action: Title VII Sexual Harassment

Plaintiff alleges that the WWF violated Title VII by discriminating against her based on her sex. She claims the WWF is liable for compensatory and punitive damages, attorneys' fees, and costs. (Sec.Am. Compl.¶¶ 49–57.)

By its terms, Title VII prohibits discrimination on the basis of sex with respect to the "compensation, terms, conditions, or privileges" of employment. 42 U.S.C. § 2000e–2(a)(1).[2] Although neither the statute nor its legislative history fleshes out the meaning of this sweeping prohibition, it is now established law that Title VII "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Accordingly, sexual and racial harassment in the workplace violates "Title VII's broad rule of workplace equality." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). A plaintiff can state a claim of sexual harassment under two theories, quid pro quo and hostile work environment harassment.

**2.** "It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

### 1. Quid Pro Quo

■ Under the EEOC guidelines, "quid pro quo harassment occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual.'" *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.) (quoting 29 C.F.R. § 1604.11(a)(2)) (alteration in *Karibian* ), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994). To state a claim under this theory, a plaintiff must allege "that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Id.* The relevant inquiry is whether the employer has linked tangible job benefits to the acceptance or rejection of sexual overtures. *See id.* at 778.

■ Here, Plaintiff not has alleged sufficient facts to state a Title VII claim under the quid pro quo theory. She has stated that Steven Lombardi made sexual advances to Plaintiff while on an airplane and fondled her breasts. She also maintains that she rejected his advances. Nowhere, however, does she allege that Lombardi or any other member of the WWF subjected her to adverse employment conditions because of her *refusal to submit.* On the contrary, she claims that Lombardi threatened her with adverse repercussions if she *reported* his sexual misconduct. (Sec.Am.Compl.¶¶ 33–36.) Stated simply, Plaintiff fails to allege that either Lombardi or any other member of the WWF linked tangible job benefits *to her rejection of his advances.* Accordingly, at this stage in the proceedings she cannot maintain the claim based solely upon a quid pro quo theory.

### 2. Hostile Work Environment

■ The fact that Plaintiff has not stated a claim based on a quid pro quo theory is not fatal to her Title VII sexual harassment cause of action. She can proceed under a hostile work environment theory as well. To state a cause of action under a hostile work environment theory, the plaintiff's workplace must be "permeated with discriminatory intimidation ... sufficiently severe or pervasive to alter the conditions of [employment]." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and quotations omitted); *see also Harris*, 510 U.S. at 21, 114 S.Ct. 367. Such a claim will succeed "only where the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment, and where the victim subjectively perceive[s] the environment to be abusive." *Richardson v. New York State Dep't of Correctional Service*, 180 F.3d 426, 436 (2d Cir.1999) (internal quotations omitted and alteration in *Richardson* ).

■ When evaluating the conduct, courts must consider the "totality of the circumstances," looking to "the quantity, frequency, and severity" of the alleged acts of discrimination. *Id.* at 437. Usually, the harassment must constitute more than isolated or episodic incidents and instead must manifest a "steady barrage" of disparaging incidents. *Schwapp*, 118 F.3d at 110. However, even a single act can give rise to a hostile work environment claim if the act is sufficiently severe to alter the work environment. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998). Thus, the terms "severe" and "pervasive" work in tandem to qualify what acts, evaluated in light of the totality of the circumstances,[3] rise to the level of actionable discrimination. The Supreme Court has cautioned, however, that the

**3.** The Supreme Court has articulated skeletal guidance for this totality of the circumstances test. Courts should look at (1) the frequency and severity of the conduct; (2) whether the conduct was physically threatening, humiliating, or merely offensive utterances; (3) whether it unreasonably interferes with the employee's job performance; and (4) the effect on the employee's psychological well-being. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367.

actionable threshold is "sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citation omitted); *see, e.g., Quinn*, 159 F.3d at 768 (holding a supervisor's recounting to a female employee that she had been voted the "sleekest ass" in the office and a subsequent incident in which he deliberately touched her breasts with some papers insufficiently pervasive to sustain a Title VII claim).

 Once she has demonstrated a hostile work environment, the plaintiff must then show some specific basis for imputing the harassment to the employer. *See Torres v. Pisano*, 116 F.3d 625, 633 (2d Cir.), *cert. denied*, 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997). The basis required depends upon whether the harassing employee was an upper-level employee, a lower-level or same-level employee, or a non-employee. *See Quinn*, 159 F.3d at 766–67. "An employer *is* subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (emphasis added). However, the employer may be liable for the actions of an employee of equal or inferior rank if the employer either provided no reasonable avenue for the complaint or knew or should have known of the harassment but did nothing about it. *See Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir.2000).

 Plaintiff has produced sufficient allegations to sustain her cause of action on a hostile work environment theory. She claims that she and other female members of the WWF were subjected to "repeated and unwelcome sexual advances and intrusions" by male members of the WWF. Specifically, she alleges that certain male WWF members accosted Plaintiff and other female members while they were dressing, undressing, or showering. She recites an incident in which she was called "Mister" by a male member of the WWF who then simulated a sexual act with his microphone directed at her buttocks. Finally, she states that Lombardi sexually assaulted her by groping her breasts while pushing her up against a wall and pushing his body into hers. She claims these intrusions were subjectively unwelcome, humiliating, and offensive, and that they altered the terms or conditions of her employment. (Sec.Am. Compl.¶¶ 22–25, 29–32, 44, 46–47.) These allegations suffice to show a workplace permeated with discriminatory intimidation which was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create both an objectively and subjectively hostile or abusive work environment.

 Furthermore, Plaintiff states sufficient bases to impute the conduct to the WWF. She avers that Lombardi is a long-time employee of the WWF and a member of the WWF management with significant control and authority over her employment. She also claims that other harassing conduct was perpetrated by WWF "officers." Finally, she asserts that the harassment was "well known to the senior management of the WWF, yet it failed and refused to take any steps to prevent such conduct." (*Id.* ¶¶ 23, 29–30, 32, 35, 37, 48.) Plaintiff's First Cause of Action states a valid Title VII claim for sexual harassment.

### B. Second Cause of Action: Title VII Retaliation

 Plaintiff alleges that the WWF violated Title VII by retaliating against her for her opposition to their discriminatory conduct. She seeks punitive and compensatory damages, attorneys' fees, and costs from the WWF.[4] (Sec.Am. Compl.¶¶ 58–63.)

---

**4.** It is well-settled that Congress did not intend to hold individuals liable in their individ-

Title VII proscribes certain retaliation by an employer against employees. *See* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). A prima facie case of retaliation requires the plaintiff to show that (1) she opposed an activity made unlawful by Title VII; (2) the employer was aware of her opposition to the unlawful activity; (3) the employer took action which adversely affected her employment; and (4) the adverse employment action was causally connected to her opposition to the unlawful activity. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995); *Brennan v. City of White Plains*, 67 F.Supp.2d 362, 370 (S.D.N.Y. 1999). A protected activity is defined as (1) an employee's opposition to any activity which is prohibited by Title VII, or (2) an employee's participation in any Title VII investigation or proceeding. *See* 42 U.S.C. § 2000e–3; *Brennan*, 67 F.Supp.2d at 371. The causal connection may be established indirectly by showing that the protected activity was closely followed in time by the adverse employment action. However, not every action taken by an employer and unfavorable to the employee rises to the level of an adverse employment action redressable under Title VII. *See Brennan*, 67 F.Supp.2d at 374.

Plaintiff states a claim for Title VII retaliation. She claims to have been the victim of sexual harassment by Lombardi and other members of the WWF.

She also claims that she opposed the harassment and that the WWF knew of her opposition both by word-of-mouth and through first-hand knowledge. (Sec.Am. Compl.¶¶ 24, 26, 31–35, 37.) Finally, she alleges that she was threatened with physical harm and possible adverse employment action if she reported certain incidents. (*Id.* ¶¶ 33–37.) She further alleges that she was unlawfully discharged as well. (*Id.* ¶¶ 44, 46.) These allegations suffice to state a claim of retaliation for the specific incident instigated by Lombardi on the flight out of New York; furthermore, they raise the inference that the WWF was hostile to sexual harassment complaints in general and that it retaliated against Plaintiff for other objections to the harassment. She therefore states a claim for Title VII retaliation, and Defendants' motions to dismiss her Second Cause of Action must fail.

### C. Third Cause of Action: Equal Pay Act

Plaintiff claims that the WWF violated the Equal Pay Act in failing to pay her wages comparable to those of its male employees. She seeks compensatory and punitive damages, attorneys' fees, and costs from the WWF. (Sec.Am. Compl.¶¶ 64–67.)

"The Equal Pay Act (EPA) prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Gerbush v. Hunt Real Estate*

---

ual capacity under Title VII. *See Tomka v. Seiler*, 66 F.3d 1295, 1313–17 (2d Cir.1995); *Dean v. Westchester County Dist. Attorney's Office*, 119 F.Supp.2d 424, 428 (S.D.N.Y. 2000). In addition, the convincing majority of courts has held that a Title VII action cannot be maintained against an individual in his official capacity. *See, e.g., Perks v. Town of Huntington*, 96 F.Supp.2d 222, 226–27

(E.D.N.Y.2000); *Salvatore v. KLM Royal Dutch Airlines*, No. 98–Civ.–2450(LAP), 1999 WL 796172, at *7 (S.D.N.Y. Sept.30, 1999) (citing cases). Accordingly, Plaintiff's claims are read as against the WWF alone, with the allegations against Lombardi serving only to impute liability to the WWF. Plaintiff in fact urges this reading in her opposition papers. (Pl. Opp. at 6 n. 2, 13 n. 6.)

*Corp.,* 234 F.3d 1261 (2d Cir.2000) (quoting 29 U.S.C. § 206(d)). EPA claims are analyzed under the same general standards as Title VII claims but do not require a showing of discriminatory intent. *See Gerbush v. Hunt Real Estate Corp.,* 79 F.Supp.2d 260, 262 (W.D.N.Y.1999), *aff'd,* 234 F.3d 1261 (2d Cir.2000).

To prove discrimination under the Equal Pay Act, a plaintiff must show that (1) the employer pays different wages to employees of the opposite sex, (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility, and (3) the jobs are performed under similar working conditions. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Lavin–McEleney v. Marist Coll.,* 239 F.3d 476, 480 (2d Cir.2001). " 'A plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are "substantially equal" ' in skill, effort, and responsibility." *Lavin–McEleney,* 239 F.3d 476, 480 (alteration in *Lavin–McEleney* corrected) (quoting *Tomka,* 66 F.3d at 1310).

Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim. A plaintiff must allege at least some facts to support contentions that her employer violated the EPA. *See Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007–08 (2d Cir.1991) (affirming "with no difficulty" the district court's dismissal under Rule 12(b)(6) of an EPA claim whose sole allegation was that the plaintiff "was not receiving equal pay for equal work"); *Lacey v. Carroll McEntee & McGinley, Inc,* No. 3–CIV.–8832 (KTD), 1994 WL 592158, at *3 (S.D.N.Y. Oct.26, 1994) (dismissing an EPA claim when the plaintiff "alleged disparate wages, equal performance level and similar working conditions but did not supply any facts to support her allegations").

Plaintiff's Second Amended Complaint contains only two isolated and rudimentary assertions supporting her EPA claim. "Upon information and belief, Plaintiff was paid lower wages than males performing comparable work." (Sec.Am. Compl.¶ 45.) "Defendant WWFE failed to pay equal wages to plaintiff for equal work, because of her sex, in violation of the Equal Pay Act." (*Id.* ¶ 65.) She does not offer a male counterpart with a higher salary, nor does she suggest that other females are likewise discriminated against. In sum, she fails to elaborate facts supporting her "information and belief" or even giving rise to a reasonable inference to support her claim. Accordingly, she fails to state a claim under the Equal Pay Act, and her Third Cause of Action will be dismissed.

## D. State Law Claims

Plaintiff's remaining claims are New York statutory and common law causes of action. Defendants claim that Connecticut law applies to the state law claims in this case because the employment contract between Plaintiff and the WWF contains a contractual provision designating the governing law as Connecticut law and because the WWF headquarters and principal place of business are located in Connecticut. Because Defendants challenge the propriety of the application of New York law to this action, a brief choice of law discussion is necessary before proceeding to the merits.

This court is exercising its supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. A federal court entertaining state law claims under its supplemental jurisdiction applies the choice of law principles of the state in which it sits. *See North Atlantic Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir.1999); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (diversity court). Thus, this court will apply New York's choice of law rules.

The first step in New York's choice of law analysis is to determine

**504**

whether an actual conflict of laws exists between the jurisdictions. *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936 (1993); *see also Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 921, 612 N.E.2d 277 (1993) ("Choice of law principles become relevant, however, only when a State can ... choose between the conflicting laws."). If the party urging a choice of law analysis fails to demonstrate a true conflict between New York and another state's laws, no choice of law analysis need be undertaken. *See Portanova v. Trump Taj Mahal Assocs.*, 270 A.D.2d 757, 759–60, 704 N.Y.S.2d 380, *leave denied*, 95 N.Y.2d 765, 716 N.Y.S.2d 39, 739 N.E.2d 295 (2000). Defendants have not done so. To the contrary, the WWF argues that both Connecticut and New York workers' compensation law bars Plaintiff's tort claims equally. (WWF Opp. 14 & n. 4.) Because Defendants have not articulated a meaningful conflict between New York law and Connecticut law with respect to Plaintiff's state law claims, this court could apply New York law without further inquiry. Even assuming Defendants could persuasively demonstrate that the two states' laws do conflict, however, this court would still apply New York substantive law to Plaintiff's claims for the following reasons.

■ New York choice of law rules depend upon the nature of the underlying action. *See Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Claims which focus on loss allocation, for example, are governed by the laws of the state with the most significant contacts to the underlying action. *See Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir.1999) (citing *Allstate*, 597 N.Y.S.2d at 905, 613 N.E.2d 936); *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994). Claims which involve regulation of conduct, on the other hand, generally are determined by the law of the jurisdiction which has the greater interest

in the dispute. *See AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.1992); *In re Travelers Indem. Co.*, 606 N.Y.S.2d 167, 170, 195 A.D.2d 35 (1993). Anti-discrimination laws are more aligned with conduct-regulation principles than loss-allocation principles. *See Robins v. Max Mara, U.S.A., Inc.*, 923 F.Supp. 460, 465 (S.D.N.Y.1996) (applying the "interest analysis" choice of law analysis to a claim of employment discrimination under the New York Executive Law).

■ Plaintiff's claims are not based on her employment contract. Although she claims to have been wrongfully discharged, she does not assert a single contract-based cause of action, and has not even attached the employment contract as part of her complaint. She is not seeking insurance, contribution, or indemnification. Instead, her state claims sound in harassment, discrimination, and tortious conduct, actions regulated by statute and common law. Accordingly, the conduct-regulation choice of law analysis constrains this court to apply the law of the state "most intimately concerned with the outcome of the particular litigation." *Babcock*, 240 N.Y.S.2d at 749, 191 N.E.2d 279 (quotations omitted).

■ In deciding which state has the prevailing interest, courts look to the facts and contacts relating to the particular conflicts of the states' laws. *See AroChem*, 968 F.2d at 270. In tort-like causes of action, this inquiry focuses on the locus of the conduct giving rise to the action, rather than the domiciles of the parties. *See id.* In fact, the jurisdiction in which the incidents primarily occurred will have a "predominant, if not exclusive, concern." *Babcock*, 240 N.Y.S.2d at 750, 191 N.E.2d 279.

Although the WWF's headquarters and principal place of business are in Connecticut, it is not apparent from the face of the Second Amended Complaint that any of the alleged discriminatory incidents oc-

curred there.[5] In fact, many of the acts are alleged to have occurred in New York. Plaintiff claims that locker room intrusions occurred at New York events and that Lombardi threatened and harassed her in New York. In addition, although unclear, it is possible that the incident with Lombardi on the flight that originated at Kennedy Airport occurred within New York. (Sec. Am.Compl.¶¶ 23–24, 28–31.) Without question, the interest analysis favors applying New York law to the enumerated state law causes of action.

### 1. Fourth Cause of Action: Executive Law Sex Discrimination

Plaintiff avers that Defendants WWF and Lombardi engaged in sex discrimination in violation of New York State Executive Law. She seeks compensatory damages, attorneys' fees, and costs against both defendants. (Sec.Am.Compl.¶¶ 68–72.)

■ Lombardi first argues that individuals may not be held liable under the Executive Law. Although primarily aimed at curbing discrimination by employers, the Executive Law holds individuals liable under certain circumstances. Under § 296(1), an individual may be liable if he has the power to do more than simply carry out personnel decisions made by others.[6] See Patrowich v. Chemical Bank, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11 (1984); Tomka, 66 F.3d at 1317. Also, an individual may be liable under § 296(6) for directly participating in the unlawful conduct, regardless of his status in the corporation.[7] See Murphy v. ERA

United Realty, 251 A.D.2d 469, 674 N.Y.S.2d 415, 417 (2d Dep't.1998); Steadman v. Sinclair, 223 A.D.2d 392, 636 N.Y.S.2d 325, 326 (1st Dep't.1996); Curran v. All Waste Recycyling, Inc., 213 F.3d 625, No. 99–9250, 2000 WL 639999, at *2 (2d Cir. May 16, 2000). Although Lombardi's precise status in the WWF is unclear from the pleadings, Plaintiff has alleged that he is a part of the WWF management and exercises significant authority, direction, and control over Plaintiff. Additionally, she has specifically alleged incidents of discrimination in which Lombardi participated directly and indirectly. (Sec. Am.Compl.¶¶ 28–32.) She has therefore sustained her minimal burden of pleading at this stage in the litigation. See Perks v. Town of Huntington, 96 F.Supp.2d 222, 228 (E.D.N.Y.2000).

■ Both defendants argue that the Executive Law cannot apply to certain allegations because they took place outside the state of New York. Defendants are correct. The statute does not provide a cause of action for discriminatory acts committed outside the state by a nonresident defendant. See N.Y. EXEC. LAW § 298–a(3); Sherwood v. Olin Corp., 772 F.Supp. 1418, 1422–23 (S.D.N.Y.1991) (conducting, on a matter of first impression and after requesting briefs from the Attorney General of New York, an inquiry into the interpretation of the statute and concluding that the statute only provides administrative remedies for out-of-state discrimination by nonresidents). Although not yet visited by state courts or federal

5. Because Plaintiff's claims are outside the scope of any employment contract, the WWF's contention that she entered into an employment contract made in Connecticut with a Connecticut choice of law provision is irrelevant for the purposes of these motions.

6. It is "an unlawful discriminatory practice" for an "employer" to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment," based on the individual's sex, or to

"discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified or assisted in any proceeding under this article." N.Y. EXEC. LAW §§ 296(1)(a), (e).

7. "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or to attempt to do so." N.Y. EXEC. LAW § 296(6).

appellate courts, the district courts in this circuit have unanimously upheld that determination. *See, e.g., Ghandour v. American Univ. of Beirut,* No. 97–Civ.–7741, 1998 WL 856114, at *2 (S.D.N.Y. Dec.9, 1998) (citing cases); *Wilcox v. PRC of New York LP,* No. 95–Civ.–1292, 1997 WL 141682, at *3 (N.D.N.Y. Mar.24, 1997) (citing cases). However, this legal nuance is not fatal to Plaintiff's cause of action. As mentioned above, Plaintiff's Second Amended Complaint can be read liberally to imply that New York was the situs for many of the discriminatory acts. (Sec.Am. Compl.¶¶ 23–24, 28–31.) Plaintiff has alleged sufficient discriminatory incidents within New York to survive Defendants' motions to dismiss on that ground.[8]

### 2. Fifth Cause of Action: Administrative Code Discrimination

■ Plaintiff submits that Defendants WWF and Lombardi engaged in sex discrimination in violation of the New York City Administrative Code. She seeks compensatory damages, punitive damages, liquidated damages, attorneys' fees, and costs from both defendants.[9] (Sec.Am. Compl.¶¶ 73–78.)

■ Defendants argue that the Administrative Code requires, as a prerequisite, that the plaintiff first file a copy of the complaint with the City Commission on Human Rights.[10] While there is some authority to support Defendants' position, the majority of courts to address the issue have rejected the argument that a failure to serve a copy bars a cause of action under the Administrative Code. *See, e.g., Brower v. Continental Airlines, Inc.,* 62

F.Supp.2d 896, 908 (E.D.N.Y.1999) (citing cases); *Duffy v. Drake Beam Morin,* No. 96–Civ.–5606 (MBM), 1998 WL 252063, at *11 n. 8 (S.D.N.Y. May 19, 1998) (citing cases and calling the issue "now settled"); *Robins,* 923 F.Supp. at 465–66 (engaging in a comprehensive analysis of the statute and concluding that the requirement serves only to provide notice and therefore does not bar an action); *Teller v. America West Airlines, Inc.,* 240 A.D.2d 727, 659 N.Y.S.2d 314, 315 (2d Dep't.1997); *Bernstein v. 1995 Assocs.,* 217 A.D.2d 512, 630 N.Y.S.2d 68, 71–72 (1st Dep't.1995). This court agrees and sides with the persuasive majority.

■ Defendants also argue that, like the Executive Law, the Administrative Code applies differently depending upon the locus of the parties and the alleged acts. Defendants are entirely correct. Both state and local law limits the Administrative Code's application to acts committed within New York City. *See* N.Y. GEN. MUN. LAW § 239–s ("[T]he jurisdiction of the New York city commission on human rights in relation to matters *within the city of New York* shall be deemed to be concurrent with the jurisdiction of the New York state division ...") (emphasis added); N.Y.C. ADMIN. CODE § 2–201; *Levy v. City Comm'n on Human Rights,* 85 N.Y.2d 740, 628 N.Y.S.2d 245, 246–47, 651 N.E.2d 1264 (1995) *Duffy,* 1998 WL 252063, at *11. However, for the same reasons she has stated a claim under the Executive Law, Plaintiff has also pleaded sufficient allegations and raised sufficient inferences of actionable discrimination within New York City to state a claim under the Administrative Code.[11]

---

8. Plaintiff has alleged sufficient incidents within New York state to survive a motion to dismiss her Executive Law claim. It is thus unnecessary at this time to consider whether she may properly use evidence of discriminatory acts which occurred outside of New York to support her claim.

9. In addition, individuals clearly may be held liable under the Administrative Code. *See Harrison v. Indosuez,* 6 F.Supp.2d 224, 233–34 (S.D.N.Y.1998).

10. "Prior to commencing a civil action pursuant to subdivision a of this section, the plaintiff shall serve a copy of the complaint upon the city commission on human rights and the corporation counsel." N.Y.C. ADMIN. CODE § 8–502(c).

11. Plaintiff has alleged sufficient incidents within New York City to survive a motion to dismiss her Administrative Code claim. It is thus unnecessary at this time to consider whether she may properly use evidence of

### 3. Sixth, Seventh, and Eighth Causes of Action: Assault, Battery, and Negligence

Plaintiff claims that Lombardi intentionally assaulted her and committed battery against her, and that Lombardi and the WWF are liable for those acts. She seeks compensatory damages, punitive damages, attorneys' fees and costs. (Sec.Am. Compl.¶¶ 79–86.) She also claims that the WWF is liable for negligence in failing to maintain a safe workplace, free from sex discrimination and with adequate medical facilities. She seeks compensatory and punitive damages, attorneys' fees, and costs from the WWF. (Sec.Am. Compl.¶¶ 87–92.)

Lombardi first argues that the claims are time-barred under the applicable statute of limitations. Assault and battery must be brought within one year of the occurrence. *See* N.Y. C.P.L.R. § 215(3). Plaintiff filed her original Complaint, absent the common law claims but inclusive of the same general factual allegations giving rise to those claims, in September of 1999. She thereafter moved to amend her complaint to include the common law claims on May 22, 2000. She attached the Second Amended Complaint, as a proposed amendment, to the motion to amend. After obtaining leave to amend from this court, she filed the Second Amended Complaint in October of 2000. Lombardi claims that the factual allegations, most of which appear to have occurred before July of 1999, are barred by the one-year statute of limitations. Plaintiff counters that her tort claims relate back to the date she filed her original Complaint.

A plaintiff seeking to add a defendant through claims which would be barred by the statute of limitations must do so under the provisions of Rule 15(c) of the Federal Rules of Civil Procedure. *See* MOORE'S FEDERAL PRACTICE 3D § 15.19[3][a] (2000). Rule 15(c) states that, for statute of limitations purposes:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and . . . the party to be brought in by amendment
>
>> (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and
>>
>> (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

FED. R. CIV. P. 15(c).

Although not explicitly stated in Rule 15(c)(3),[12] courts have expanded its purview to cover adding, in addition to merely changing, defendants. *See In re Integrated Resources Real Estate Ltd. Partnerships Securities Litig.*, 815 F.Supp. 620, 642 (S.D.N.Y.1993). Accordingly, for new claims asserted against a new defendant to relate back in time to the original complaint, the plaintiff must demonstrate, in addition to other factors, that

---

discriminatory acts which occurred outside of New York City to support her claim.

**12.** Although Rule 15(c)'s subsections are stated in the disjunctive, Rule 15(c)(2) arguably does not apply to an amendment adding a new party. Rule 15(c)(3) explicitly addresses the situation involving changing defendants, and incorporates the requirements of Rule 15(c)(2) as a necessary prerequisite to Rule 15(c)(3). Rule 15(c)(2) is, in effect, subsumed as a condition to Rule 15(c)(3). To apply the subsections as strictly disjunctive, therefore, would be to completely negate the applicability of Rule 15(c)(3).

the new party knew or should have known that the action would have been brought against the party but for a mistake in identity. *See* FED. R. CIV. P. 15(c)(3)(B). This requirement balances the deference to be afforded statutes of limitations against the policy of preventing legitimate legal claims from being squelched by technicalities and mistake. The plaintiff bears the burden of proving that the failure to name the new defendant in the original pleading was a "mistake," and not due to strategy, lack of knowledge, or some other reason. *See Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 469–70 (2d Cir.1995), *modified on other grounds,* 74 F.3d 1366 (1996); *Integrated Resources,* 815 F.Supp. at 648.

■ Here, Plaintiff clearly knew of Lombardi's involvement when she filed her original Complaint. She makes no attempt to excuse her failure to name him as a defendant in the original action because of mistaken identity, nor would it seem reasonable for her to try to do so given the graphic allegations she makes against him. Without mistaken identity, Plaintiff's relation-back argument must fail. *See Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994) (holding that Rule 15(c)(3) does not apply when the failure to name a defendant is due to choice rather than mistake). Accordingly, her tort claims against Lombardi cannot relate back to her original complaint.[13]

■ However, "the date of the filing of the motion to amend [the complaint] constitutes the date the action was commenced for statute of limitations purposes." *Northwestern Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts,* 769 F.Supp. 498 (S.D.N.Y.1991). Thus, for statute of limitations purposes in connection with the tort claims asserted against Lombardi, the claims were commenced on May 22, 2000, when Plaintiff filed her motion to amend the complaint. Her assault and battery claims against Lombardi must therefore be based on facts alleged to have occurred after May 22, 1999.

■ To maintain a cause of action based on battery, the plaintiff must allege an intentional harmful or offensive "touching" caused by the defendant. *See Charkhy v. Altman,* 252 A.D.2d 413, 678 N.Y.S.2d 40, 41 (N.Y.App.Div.1998); *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 (2d Cir.1993). The only harmful or offensive physical contact Plaintiff alleges occurred on the airplane on May 15, 1999. (Sec.Am. Compl.¶ 28, 31.) She alleges no other harmful or offensive touching by Lombardi after May 22, 1999.[14] The one-year statute of limitations therefore bars her cause of action for battery against Lombardi.

■ Plaintiff does, however, state a claim for assault against Lombardi. To state a claim for assault, a plaintiff must plead an intentional placing of another person in fear of imminent harmful or offensive contact. *See Holtz v. Wildenstein & Co.,* 261 A.D.2d 336, 693 N.Y.S.2d 516, 517 (N.Y.App.Div.1999); *Charkhy,* 678 N.Y.S.2d at 41; *Waterfront,* 994 F.2d at 108. Plaintiff has stated that, after the alleged May 15, 1999 incident on the Kennedy Airport flight, Lombardi "repeatedly approached Plaintiff from behind, came in

**13.** Nor does Rule 15(c)(1) save Plaintiff's relation-back argument. Even were Rule 15(c)(1) to apply, New York's relation-back doctrine incorporates a standard similar to Rule 15(c)(3), requiring the plaintiff to have made a mistake in identity. *See Buran v. Coupal,* 87 N.Y.2d 173, 178, 638 N.Y.S.2d 405, 661 N.E.2d 978 (1995). Although the Court of Appeals has lightened the burden on plaintiffs by removing the former "excusability" requirement, when "there has been no mistake, ... the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired." *Id.* at 181, 638 N.Y.S.2d 405, 661 N.E.2d 978.

**14.** Plaintiff does intimate that Lombardi "came in close physical contact" with her on subsequent encounters. Even if this phrase were read to be a "touching," she does not allege that it was harmful or offensive. (Sec. Am.Compl.¶ 34.)

close physical contact, invaded her physical space, and threatened Plaintiff [with] physical[ ] harm, including being dropped on her head and becoming paralyzed for life." (Sec.Am.Compl.¶ 34.) Liberally construing the pleadings, Plaintiff states a claim for assault against Lombardi within the applicable statute of limitations.

 Although Plaintiff's tort claims against Lombardi cannot relate back under Rule 15(c), her tort claims against the WWF relate back to the original complaint. New claims against old parties may relate back if they arise out of the same conduct or occurrences. *See* FED. R. CIV. P. 15(c)(2). As against the WWF, therefore, Plaintiff may state claims of assault and battery based on facts alleged to have occurred within one year prior to the date of her original complaint. The WWF does not dispute this; it contends, however, that the New York workers' compensation statute precludes its liability. Section 11 of the New York Workers' Compensation Law prescribe workers' compensation as the exclusive remedy for an injury at work. *See* N.Y. WORK. COMP. LAW § 11 ("The liability of an employer prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever . . . ."); *Acevedo v. Consolidated Edison Co. of N.Y., Inc.*, 189 A.D.2d 497, 596 N.Y.S.2d 68, 69 (N.Y.App.Div.) ("The type of 'injury' for which § 11 prescribes Workers' Compensation as the sole and exclusive remedy is any accidental injury arising out of and in the course of employment."), *leave dismissed*, 82 N.Y.2d 748, 602 N.Y.S.2d 806, 622 N.E.2d 307 (1993).

 An employer's intentionally tortious acts are exempted from § 11's exclusivity provision. *See Greco v. Staten Island Univ. Hosp.*, No. Civ.A. CV–997401, 2000 WL 804634, at *2 (E.D.N.Y. May 1, 2000) (citing cases from all four Appellate Divisions); *see also Hart v. Sullivan*, 84 A.D.2d 865, 445 N.Y.S.2d 40, 41 (N.Y.App. Div.1981) (exempting "willful" employer conduct), *aff'd*, 55 N.Y.2d 1011, 449 N.Y.S.2d 481, 434 N.E.2d 717 (1982). It is important to note that the requisite "intent" or "willfulness" must stem from the employer, not merely from a co-employee. *See Thompson v. Maimonides Med. Ctr.*, 86 A.D.2d 867, 447 N.Y.S.2d 308, 310 (N.Y.App.Div.1982) ("But while the tort may be intentional as to the coemployee, it may be accidental from the standpoint of the employer unless it was perpetrated at the employer's direction or instigation, for then the Workers' Compensation bar becomes applicable.") (internal citations omitted). Thus, the employer must be directly liable for its own intentional torts which triggers the exception; vicarious liability alone will not overcome the exclusivity provision. *See Randall v. Tod–Nik Audiology, Inc.*, 270 A.D.2d 38, 704 N.Y.S.2d 228, 230 (N.Y.App.Div.2000) ("The exclusivity provisions of the Workers' Compensation Law do not apply to bar an action by an employee to recover for an intentional tort committed, instigated or authorized by the employee's employer."); *Orzechowski v. Warner–Lambert Co.*, 92 A.D.2d 110, 460 N.Y.S.2d 64, 66 (N.Y.App. Div.1983) (holding the allegation that defendants "consciously, willfully, knowingly and intentionally ignored the hazards they created" insufficient to survive summary judgment); *Greco*, 2000 WL 804634, at *2 (stating that mere "knowledge of a hazard, or failure to protect plaintiff from a known hazard" is insufficient to circumvent the exclusivity provision).

 Plaintiff has alleged sufficient facts to state claims for assault and battery. She alleges that Lombardi is a member of WWF with significant managerial control. (Sec.Am.Compl.¶¶ 29–30, 32, 34.) She also alleges that "officers" of the WWF invaded the privacy of her locker room and intentionally caused her to be the victim of unwelcome, harmful, and offensive sexual advances. (*Id.* ¶¶ 22–27, 37.) She describes Lombardi's offensive "touching" of her on the airplane. (*Id.* ¶ 31.) She alleges a repeated and continuous threat by Lombardi of physical harm.

(*Id.* ¶¶ 33–34, 36.) Finally, she claims that the WWF intended her to be hit on the head with a guitar. (*Id.* ¶¶ 38–40.) She raises the reasonable inference that her claims of assault and battery were either directly perpetrated by the WWF or were authorized and intended by the WWF. To this extent, her assault and battery claims against the WWF survive the Workers' Compensation exclusivity provision.

■ However, Plaintiff's claim of negligence cannot stand. Section 11 clearly and unambiguously excludes employer negligence from private causes of action in favor of workers' compensation remedies. Her Eighth Cause of Action, therefore, will be dismissed.

### E. Punitive Damages, Attorneys' Fees, and Court Costs

Plaintiff seeks punitive damages, attorneys' fees, and costs in every cause of action she claims except for her Fourth Cause of Action under the Executive Law. Defendants argue that her claims for attorneys' fees and punitive damages should be dismissed. Plaintiff's statutory claims benefit from statutory authority for awarding punitive damages, costs, and attorneys' fees. In so far as the applicable statutes authorize these remedies, Defendants' argument is specious.

■ Plaintiff's requested remedies on her tort claims deserve more scrutiny. Her tort claims stand on allegations of direct liability, not vicarious liability, and therefore may warrant punitive damages. In addition, attorneys' fees and costs may be collected by a prevailing litigant in the court's discretion when there has been malicious or bad-faith misconduct. *See In re Saxton*, 274 A.D.2d 110, 712 N.Y.S.2d 225, 233 (N.Y.App.Div.2000); *Bibeau v. Ward*, 228 A.D.2d 943, 645 N.Y.S.2d 107, 111 (N.Y.App.Div.), *leave denied*, 89 N.Y.2d 804, 653 N.Y.S.2d 543, 676 N.E.2d 72 (1996); *United Pickle Co. v. Omanoff*, 63 A.D.2d 892, 892–93, 405 N.Y.S.2d 727(1978). Although it is unlikely that the facts would support fee-shifting or cost-shifting for Plaintiff's tort claims, that determination is premature at this stage.

### IV. Conclusion

The plaintiff's burden at the pleading stage is de minimis. Some of her claims withstand Defendants' motions to dismiss at this preliminary stage, and this court cannot say without the benefit of a factual record developed through discovery that Plaintiff cannot prove what she alleges in support of them. Nevertheless, as articulated above, some of her claims cannot stand. Accordingly, it is hereby ORDERED that Defendants' motions to dismiss are GRANTED in part and DENIED in part to the following effect:

Plaintiff's Third Cause of Action for Equal Pay Act violations is DISMISSED in its entirety for failure to state a claim; and

Plaintiff's Seventh Cause of Action for battery is DISMISSED as against defendant Lombardi because it is barred by the statute of limitations; and

Plaintiff's Eighth Cause of Action for negligence is DISMISSED in its entirety because it is barred by the Workers' Compensation Law; and

Defendants' motions to dismiss are DENIED in all other respects.

SO ORDERED.